(No. 106686.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. TAVARES HUNT, Appellee.

*Opinion filed June 4, 2009.*

Lisa Madigan, Attorney General, of Springfield, and Richard A. Devine and Anita Alvarez, State's Attorneys, of Chicago (James E. Fitzgerald, Susan R. Schierl Sullivan, Ashley A. Romito, Alan J. Spellberg, Annette N. Collins and Veronica Calderon Malavia, Assistant State's Attorneys, of counsel), for the People.

Jack P. Rimland and Joshua B. Kutnick, of Chicago, for appellee.

JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

Defendant initially filed a pretrial motion to suppress all "tape recordings, statements, and conversations" with an informant during two court-ordered consensual "overhears," arguing they violated his rights to counsel and to remain silent under *People v. McCauley*, 163 Ill. 2d 414 (1994). Defendant later filed a pretrial motion to suppress audiotape recordings of those same conversations, claiming that the recordings were inaudible. The circuit court of Cook County ultimately granted both motions, suppressing defendant's statements and the recordings. On interlocutory appeal, the appellate court affirmed the suppression order, but on grounds not raised by the parties. 381 Ill. App. 3d 790, 809. The State appeals from the appellate court's judgment, arguing that

the court: (1) exceeded its scope of review on interlocutory appeal when it suppressed statements not suppressed by the trial court; (2) misconstrued the County Jail Act (Act) (730 ILCS 125/1 *et seq.* (West 2002)); and (3) erred when it affirmed the trial court's suppression of the recordings. We affirm in part, reverse in part, and remand.

## I. BACKGROUND

When law enforcement officials began investigating the murder of Shakir Beckley in May 2002, defendant was a pretrial detainee at the Cook County jail on an unrelated offense. During the course of the Beckley investigation, defendant became a suspect, but he was not charged. Instead, on two separate occasions, July 31, 2002, and August 6, 2002, Chicago police officers signed defendant out of the county jail, transported him to a Chicago police station, and put him in an interview room with informant Mycal Davis. Davis, also a pretrial detainee on an unrelated offense, had previously agreed to participate in the investigation and was wearing a concealed wire in accordance with a court order. On each occasion, detectives recorded Davis' conversations with defendant. During each recorded conversation, defendant allegedly implicated himself in the Beckley murder. Defendant was later charged with that murder.

Defendant filed a motion to suppress all evidence of his conversations with Davis. In that motion, defendant argued the evidence was obtained in violation of his fifth amendment right to counsel (U.S. Const., amend. V) and his rights to counsel and due process under the Illinois Constitution (Ill. Const. 1970, art. I, §§2, 10), as articulated by this court in *McCauley*. At the hearing on that motion, defendant presented evidence that his attorney on the unrelated offense arrived at the police station and asked to speak with defendant during the July 31 overhear. Defendant asserted that he was not allowed to

meet with counsel until the completion of the recorded session. After meeting with counsel, defendant exercised his right to remain silent. It was undisputed that defendant's attorney was not present on August 6.

The trial court denied defendant's motion to suppress the August 6 statements, but suppressed the portion of the July 31 statements made after defendant's attorney arrived at the police station, relying on *McCauley*. The trial court later vacated its suppression order *sua sponte* and instructed the parties to provide additional arguments about the impact of the attorney's arrival on July 31. Thereafter, defendant filed a motion to suppress the tape recordings, arguing they were substantially inaudible.

The trial judge and the parties listened to the recordings before holding two combined hearings on defendant's motion to suppress statements and recordings. Defendant argued the recordings should be suppressed because they were inaudible. The State responded the recordings were sufficiently audible to hear defendant make a number of incriminating statements, including an identification of the type of gun used in the murder and the names of other people at the crime scene.

In his other challenge, defendant reasserted his earlier position that all evidence of the statements should be suppressed for violating his fifth amendment rights and his constitutional rights under *McCauley* because his attorney arrived during the July 31 session. While the State acknowledged conflicting evidence on when defendant's attorney arrived, it maintained that all statements should be admitted because they were obtained pursuant to the court order and did not violate defendant's constitutional rights.

Following the hearings, the trial court entered an oral ruling suppressing defendant's statements and the recordings. The court found that defendant's attorney

arrived at 3:14 p.m. on July 31 and that the July 31 and August 6 recordings were inaudible and "worthless."

The State filed a certificate of substantial impairment with its interlocutory appeal under Supreme Court Rule 604(a)(1) (210 Ill. 2d R. 604(a)(1)) from the suppression order. On appeal, the appellate court affirmed the suppression order but on grounds the court raised *sua sponte* and unlike those argued by the parties. 381 Ill. App. 3d at 809. The appellate court first considered the propriety of transferring defendant from the jail to the police station on July 31 and August 6. Construing section 19.5 of the Act (730 ILCS 125/19.5 (West 2002)), the court held that a judicial order is required to transfer custody of a pretrial detainee from the sheriff to the police investigating an unrelated criminal matter. 381 Ill. App. 3d at 805.

Relying on its construction of the Act and interpretation of *People v. Campa*, 217 Ill. 2d 243 (2005), the court found that defendant was illegally arrested when he was removed from the county jail on July 31 and August 6 without a court order. 381 Ill. App. 3d at 806. The appellate court then determined that defendant's statements were properly suppressed under the fourth amendment exclusionary rule because they were not sufficiently attenuated from his illegal arrests. 381 Ill. App. 3d at 807.

Applying the same logic, the appellate court further determined that the recordings were also properly suppressed as the fruits of defendant's illegal arrests. 381 Ill. App. 3d at 808. Alternatively, the appellate court found that the trial court did not abuse its discretion by suppressing the recordings because they were inaudible. 381 Ill. App. 3d at 808. Lastly, the appellate court concluded, in light of its fourth amendment analysis, that the State's substantive arguments on the constitutional prohibition against self-incrimination were rendered moot. 381 Ill. App. 3d at 809.

We allowed the State's petition for leave to appeal. 210 Ill. 2d R. 315.

## II. ANALYSIS

On appeal to this court, the State contends the appellate court: (1) exceeded its scope of review on interlocutory appeal by suppressing statements not included in the trial court's order; (2) misconstrued the Act; and (3) erred when it affirmed the suppression of the recordings as inaudible.

As a preliminary matter, we recognize the State also argues the appellate court erred when it *sua sponte* raised statutory construction and fourth amendment issues not argued or briefed by either party in the trial court. It is established that "the theory under which a case is tried in the trial court cannot be changed on review." *In re Marriage of Schneider*, 214 Ill. 2d 152, 172 (2005). This limitation is applicable to both the parties and the reviewing court. *Blanchard v. Lewis*, 414 Ill. 515, 521 (1953); see also *Geaslen v. Berkson, Gorov & Levin, Ltd.*, 155 Ill. 2d 223, 230 (1993) (admonishing appellate court not to consider different theories or new questions when those issues could have been refuted in the trial court). Accordingly, we agree with the State that the appellate court's *sua sponte* consideration of issues not considered by the trial court and never argued by the parties constituted error in this case. Nonetheless, we will examine the additional issues because the parties have fully briefed those issues and urge our consideration. See *In re Leona W.*, 228 Ill. 2d 439 (2008) (where this court considered issues raised *sua sponte* by the appellate court); *In re Mark W.*, 228 Ill. 2d 365 (2008) (same). We now turn to the merits of the issues raised by the parties on appeal.

### A. Scope of Review on Interlocutory Appeal

The State first argues the appellate court exceeded its scope of review on interlocutory appeal by extending

the suppression order to statements not originally suppressed by the trial court. Specifically, the State maintains the trial court suppressed only a portion of the July 31 statements and none of the August 6 statements and the appellate court erred by suppressing all of the statements. Defendant does not contest the State's representation of the trial court's ruling. Nonetheless, the record does not support the State's position.

It is undisputed the trial court originally entered an order partially suppressing the July 31 statements and admitting all of the August 6 statements based on *McCauley*, but then *sua sponte* vacated the partial suppression order and continued the matter for additional briefing and arguments. Thereafter, defendant filed a second motion to suppress the recordings based on their inaudibility, and the trial court held combined hearings on the two motions.

At the conclusion of the final hearing, the trial court both found the defendant's attorney arrived at 3:14 p.m. on July 31 and the recordings were "indiscernible." The court twice indicated it was suppressing "the tapes" and also stated it "could not discern" the statements on the recordings. Nowhere in its final order, however, did the court indicate it was admitting any part of defendant's statements or otherwise reissuing its earlier partial suppression order. In light of the trial court's express pronouncement that it could not discern the statements, a reasonable interpretation of the trial court's final order is that it suppressed all of defendant's statements and both recordings.

This interpretation is consistent with the parties' representations of the final suppression order on direct appeal. Before the appellate court, the State asserted in its statement of facts that the trial court "finally granted defendant's motion to suppress statements *in its entirety* and granted defendant's motion to exclude the tapes from

evidence as inaudible." (Emphasis added.) Thus, the State did not assert to the appellate court that the trial court merely reissued its partial suppression order. See *People v. Whitfield*, 228 Ill. 2d 502, 514 (2007) (taking "judicial notice of the arguments raised in the parties' respective briefs below").

In stark contrast to its position in the appellate court, however, the State now contends that the trial court reissued its partial suppression order, admitting a portion of the July 31 statements and all of the August 6 statements. Based on this latest representation, the State argues the appellate court exceeded its scope of review by extending the suppression ruling to all of defendant's statements.

The appellant bears the burden of presenting an adequate record to support its claim of error. *People v. Deleon*, 227 Ill. 2d 322, 342 (2008). Any doubts stemming from an inadequate record will be construed against the appellant. *People v. Lopez*, 229 Ill. 2d 322, 344 (2008); *In re Marriage of Gulla*, 234 Ill. 2d 414 (2009). Thus, the State, as the appellant, had the burden of presenting a record sufficient to support its claim of error, and any insufficiencies must be resolved against it.

Here, the record demonstrates the trial court's final oral suppression order did not even distinguish between the July 31 statements and the August 6 statements, let alone allow part of those statements. Therefore, this record does not support the State's current characterization of the final suppression order. Constrained by the record and the State's conflicting characterizations of that order, we necessarily conclude the trial court suppressed all of the statements and both recordings. Accordingly, the appellate court did not exceed its scope of review on interlocutory appeal as the State claims.

## B. The County Jail Act

The State next challenges the appellate court's construction of the Act (730 ILCS 125/1 *et seq.* (West

2002)). The State argues the appellate court erroneously construed the Act to require a judicial order whenever a pretrial detainee is transferred from the sheriff's custody to police for purposes of investigating an unrelated crime pursuant to section 19.5.

Defendant argues the appellate court properly construed the Act, concluding that "to allow police departments or prosecutors to summon any incarcerated inmate they see fit by simply filling out a form does not comport with the requirements of the Fourth Amendment." Defendant acknowledges, however, that "[p]erhaps the appellate court went too far because, outside the jail context, a person may be arrested without a warrant so long as there is probable cause." Defendant suggests the "proper balance to be struck" is to require "some sort of probable cause requirement as opposed to a 'judicial writ or order' " for prisoner releases to other law enforcement personnel under section 19.5 of the Act.

This issue requires us to interpret a statute, presenting a question of law we review *de novo*. *People v. Christopherson*, 231 Ill. 2d 449, 454 (2008). Our primary objective when construing a statute is to give effect to the legislature's intent, best determined by giving the statutory language its plain and ordinary meaning. *Christopherson*, 231 Ill. 2d at 454. The statute should be construed in its entirety, with each section evaluated with the other provisions. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 216-17 (2008). We will not use other construction aids when the plain and ordinary meaning of the statutory language is clear and unambiguous. *Christopherson*, 231 Ill. 2d at 454-55.

The Act requires each Illinois county to keep and maintain in good condition and repair one or more jail facilities. 730 ILCS 125/1 (West 2002). The Act designates the county sheriff as the warden of the local county jail

and, as jail warden, the sheriff has custody of all prisoners in the jail. 730 ILCS 125/2 (West 2002). Section 4 of the Act is titled "Receipt and Confinement of Prisoners" and provides, in part, that the jail warden "shall receive and confine in such jail, until discharged by due course of law, all persons committed to such jail by any competent authority." 730 ILCS 125/4 (West 2002). Section 4 also authorizes county prisoners to be taken to a jail in an adjoining county if no suitable jail exists in the county of arrest. 730 ILCS 125/4 (West 2002).

Section 19.5 of the Act is titled "Release of prisoners to law enforcement personnel or State's Attorney" and provides:

> "The sheriff may adopt and implement a written policy that provides for the release of a person who is in the custody of the sheriff for any criminal or supposed criminal matter to sworn law enforcement personnel or to the State's Attorney for the purpose of furthering investigations into criminal matters that are unrelated to the criminal matter for which the person is held in custody. The written policy must, at a minimum, require that there be a written request, signed by an authorized agent of the law enforcement agency or State's Attorney office, to take custody of the prisoner and that the written request shall include the name of the individual authorized to take custody of the prisoner, the purpose and scope of the criminal matter under investigation, and a statement of the fact that the individual taking custody and agency they are employed by understand the limitation of the sheriff's liability as described in this Act." 730 ILCS 125/19.5 (West 2002).

Section 19.5 also limits the sheriff's liability for any injury or death resulting from the transfer. 730 ILCS 125/19.5 (West 2002).

In this case, defendant was in the Cook County sheriff's custody as a pretrial detainee when he was transferred to the Chicago police department as part of an unrelated investigation. This exact scenario is not only contemplated by section 19.5 but is unequivocally

and explicitly authorized by its plain language. Moreover, section 19.5 contains absolutely no reference to a judicial order, let alone any requirement that these transfers be authorized by judicial order. Instead, section 19.5 requires only the sheriff's adoption of a written policy. Defendant does not challenge the existence of such a policy in this case. Simply put, the plain and ordinary meaning of the unambiguous language of section 19.5 does not support the appellate court's conclusion that the legislature intended to require a judicial order for transfers pursuant to that section.

Contrary to the legislative intent evident in the plain language of section 19.5, the appellate court mistakenly relied on this court's decision in *Campa* to reach a contrary conclusion. 381 Ill. App. 3d at 803-04. In *Campa*, the defendant argued he was entitled to a new trial under the speedy-trial provision of the Code of Criminal Procedure of 1963 because, in relevant part, he was not tried within 120 days and remained "in custody" despite being transferred to the Day Reporting Center by the Cook County sheriff. *Campa*, 217 Ill. 2d at 247-48. The State maintained the 120-day limit did not apply because the defendant was not "in custody" during the day reporting program and asserted that the 160-day limit for persons "on bail or recognizance" applied. *Campa*, 217 Ill. 2d at 248-49.

This court first recognized a distinction between "physical" custody and "constructive" custody. *Campa*, 217 Ill. 2d at 253-54. We concluded that "the term 'custody' [had] a broad meaning and encompass[ed] lesser forms of restraint than confinement," including day reporting programs. *Campa*, 217 Ill. 2d at 254-55. This court next considered the State's argument that the sheriff was permitted to release prisoners on their own "recognizance," even after the trial court set bail, thus triggering the 160-day speedy-trial period. Rejecting the

State's argument, we looked to the statutory provisions for bail and recognizance. We construed the plain language of those to require *judicial* action, stating "a sheriff cannot substitute his or her authority for that of the trial court merely by holding a defendant to conditions similar to those a court may impose." *Campa*, 217 Ill. 2d at 264-65.

The appellate court here read the statement as a limitation on the sheriff's authority to release *any* prisoner held on a bail order. 381 Ill. App. 3d at 803-04. The appellate court then read section 19.5, authorizing the sheriff to release prisoners to law enforcement personnel or the State's Attorney, along with section 4, requiring the sheriff to jail prisoners until they are "discharged by due course of law." 730 ILCS 125/4, 19.5 (West 2002); 381 Ill. App. 3d at 804. In light of its understanding of *Campa*, the appellate court read the "by due course of law" portion of section 4 into section 19.5 and concluded that "the sheriff acts with 'due course of law' when he releases prisoners on bail pursuant to a court order." 381 Ill. App. 3d at 804. Thus, the appellate court grafted a requirement of a court order onto all prisoner transfers under section 19.5 of the Act. 381 Ill. App. 3d at 805.

The appellate court's conclusion, however, relies on a flawed interpretation of *Campa*. *Campa* addressed only the sheriff's ability to release prisoners *on bail or on their own recognizance* in the absence of a court order. This court rejected the State's contention that, in the absence of an express statutory bar, sheriffs have implicit power under the speedy-trial statute to release those prisoners when the speedy-trial statute is read with the bail and recognizance provisions. *Campa*, 217 Ill. 2d at 264. We concluded the statutes gave courts the sole authority to set or modify bail or release prisoners on their own recognizance. *Campa*, 217 Ill. 2d at 264.

Here, the circumstances are substantially different. Section 19.5 *expressly* grants sheriffs the authority to "adopt and implement a written policy that provides for the release of a person who is in the custody of the sheriff for any criminal or supposed criminal matter to sworn law enforcement personnel or the State's Attorney for the purpose of furthering investigations into criminal matters that are unrelated to the criminal matter for which the person is held in custody." 730 ILCS 125/19.5 (West 2002). This express authority stands in sharp contrast to the implied-power argument rejected in *Campa*. In construing a statute, the plain meaning of the language is the best indicator of the legislature's intent. *Christopherson*, 231 Ill. 2d at 454. Here, the plain and unambiguous language of section 19.5 provides that sheriffs may transfer prisoners to agents of other law enforcement divisions or State's Attorneys without a prior judicial order if the statutory requirements are met.

In addition, *Campa* does not conflict with our plain-language construction of section 19.5 because defendants released on bail or on their own recognizance are no longer in the custody of law enforcement. *Campa*, 217 Ill. 2d at 260-61. Under section 19.5, however, the temporary release of a prisoner requires a written transfer request "to take custody of the prisoner" and limits the sheriff's liability for any injury suffered by a released prisoner "that occurs during the time period that the person is in custody of other law enforcement personnel or the State's Attorney." 730 ILCS 125/19.5 (West 2002). Thus, prisoners transferred under section 19.5 remain "in custody," a legal status significantly different from being free on bail or recognizance. See 730 ILCS 125/19.5 (West 2002).

Moreover, the requirement in section 4 that the sheriff keep all jail prisoners in custody "until discharged by 'due course of law' " (381 Ill. App. 3d at 804) is inap-

plicable here. Section 19.5 only authorizes a *transfer of custody* from the sheriff to law enforcement officials or the State's Attorney, not a complete discharge. 730 ILCS 125/19.5 (West 2002). We are obligated to construe statutes to give effect to both enactments if reasonably possible. *People v. Lucas*, 231 Ill. 2d 169, 182 (2008). Any alleged inconsistency between sections 4 and 19.5 may be easily reconciled by interpreting section 19.5 to authorize only a temporary transfer of physical custody from the sheriff to law enforcement officials or the State's Attorney for investigation of unrelated criminal matters, but not a final discharge from commitment at the jail, consistent with section 4.

The facts here and common sense demonstrate the applicability of this construction. After the sheriff released defendant to the custody of law enforcement officials and the court-ordered overhears were completed on July 31 and August 6, defendant was returned to the sheriff's custody and commitment at the jail. Thus, the "due course of law" provision in section 4 does not conflict with our construction of the plain language of section 19.5.

Accordingly, we hold that the plain and ordinary meaning of section 19.5 of the Act indicates the legislature did not intend to require a judicial order to release a prisoner to law enforcement officials or the State's Attorney for the purpose of investigating an unrelated criminal matter. Therefore, we reject the appellate court's *sua sponte* construction of the Act and *Campa*.

### C. Constitutional Arguments

We next turn to the appellate court's related *sua sponte* evaluation of the fourth amendment issue. After erroneously concluding that defendant had been illegally arrested, the appellate court considered whether probable cause existed for the "arrests" and whether sufficient attenuation existed between the "arrests" and his

statements to break the causal chain. 381 Ill. App. 3d at 807. Finding no alternate probable cause or attenuation, the appellate court concluded the statements must be suppressed under the fourth amendment exclusionary rule as the "fruit of the poisonous tree" and affirmed the trial court's ruling. 381 Ill. App. 3d at 807. Because section 19.5 permits prisoner transfers without the need for a court order, however, the appellate court's fourth amendment analysis is inapplicable. Thus, we reverse the portion of its judgment affirming the trial court's suppression of all defendant's statements on fourth amendment grounds.

Defendant also asserts that the appellate court implicitly held that, unless the "due course of law" provision is read into section 19.5, it violates the fourth amendment "because it permits law enforcement officials to seize jail inmates without probable cause." The appellate court, however, did not find any of the Act's provisions unconstitutional. Thus, it is not necessary to address the appellate court's implicit holding in this case. See, *e.g.*, *People v. Hampton*, 225 Ill. 2d 238, 244 (2007) (instructing that "[c]onstitutional issues should be addressed only if necessary to decide a case").

Because we have reversed the appellate court's judgment suppressing defendant's statements based on fourth amendment grounds, the original issue raised by the parties, whether the statements should be suppressed on fifth amendment and *McCauley* grounds, remains unanswered on appeal. Thus, we remand this cause to the appellate court for its consideration of that issue.

D. Suppression of the Overhear Recordings as Inaudible

Although we reject the appellate court's judgment suppressing defendant's statements on fourth amendment grounds, we must still address the alternative grounds the appellate court relied on to affirm the trial court's suppression of the recordings. The appellate court

affirmed suppression of the recordings on the alternative ground that they were substantially inaudible. 381 Ill. App. 3d at 808.

The State contends the July 31 recording should not have been suppressed as inaudible. Because the State appealed from the suppression of both the July 31 recording and the August 6 recording, however, we consider the propriety of suppressing both recordings. The State argues that the trial court's suppression ruling constitutes an abuse of discretion because the inaudible portions of the recordings were not so substantially inaudible as to render the recordings untrustworthy. Alternatively, the State asserts the audiotapes have independent evidentiary value irrespective of their substantive evidentiary admissibility.

"A partially inaudible sound recording is admissible unless the inaudible portions are so substantial as to render the recording untrustworthy as a whole." *People v. Manning*, 182 Ill. 2d 193, 212 (1998). The decision whether to admit a partially inaudible sound recording is a matter within the sound discretion of the trial court. *Manning*, 182 Ill. 2d at 212.

The record demonstrates the trial court listened to the recordings and found them to be "indiscernible" and "worthless." Similarly, the appellate court listened to the recordings, found them to be substantially inaudible, and concluded the recorded conversations could not be understood. 381 Ill. App. 3d at 808. After listening to the recordings, we also find that they are substantially inaudible and affirm the appellate court's suppression of the July 31 and August 6 recordings as within the sound discretion of the trial court. *Manning*, 182 Ill. 2d at 212.

The State further argues, irrespective of the substantive admissibility of the recordings, complete exclusion constitutes an abuse of discretion. The State maintains the recordings could be used to impeach Davis if he

"flips" or to demonstrate that Davis and defendant had a conversation. The State, however, fails to provide legal support for its position. Therefore, we find the State has forfeited its claim. *People v. Lindmark*, 381 Ill. App. 3d 638, 664 (2008) ("Points not argued with citation to authority are forfeited"), citing 210 Ill. 2d R. 341(h)(7).

### III. CONCLUSION

We reject the State's argument that the appellate court exceeded its scope of review on interlocutory appeal. We also hold that neither the plain language of section 19.5 of the County Jail Act nor our decision in *People v. Campa*, 217 Ill. 2d 243 (2005), requires a judicial order to transfer prisoners under that section and thus reverse the part of the appellate court's judgment affirming suppression of defendant's statements based on its contrary analysis. We affirm the appellate court's judgment upholding the suppression of the July 31 and August 6 recordings because they are substantially inaudible. Finally, we remand the cause to the appellate court for its consideration of the trial court's suppression of the statements on fifth amendment and *McCauley* grounds.

*Affirmed in part and reversed in part;*
*cause remanded.*