2019 IL App (1st) 171497-U

No. 1-17-1497

December 9, 2019

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 9703 |
| | ) | |
| TONY MOSLEY, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE WALKER delivered the judgment of the court.
Justices Hyman and Pierce concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's conviction for armed habitual criminal is affirmed over his challenge to the sufficiency of the evidence.

¶ 2    Following a jury trial, defendant Tony Mosley was found guilty of armed habitual criminal and sentenced to 8½ years' imprisonment. On appeal, defendant contends the State did not prove beyond a reasonable doubt that he possessed a firearm because it relied on incredible police

testimony, defendant's inculpatory statement was not memorialized, and no physical evidence linked him to the firearm. We affirm.

¶ 3                                    BACKGROUND

¶ 4     Defendant was charged by indictment with several offenses arising from an incident on June 6, 2016, in Chicago. The State proceeded on one count of armed habitual criminal (720 ILCS 5/24-1.7(a)(1) (West 2016)).

¶ 5     Chicago police officer Anastasios Mavropoulos testified that on June 6, 2016, he and his partner, Officer Roger Farias, were on patrol in a marked police vehicle. Mavropoulos was wearing his police vest, star emblem, and duty belt. Around 11 p.m., as they approached the 5600 block of South Bishop Street, he noticed a large group of people drinking in front of an abandoned building. As he exited the vehicle, he observed defendant, whom he identified in court, "immediately" turn, "reach into his waistband," "drop" a firearm, and run across a vacant lot.

¶ 6     Mavropoulos chased defendant for "about a block" and arrested him. Farias then arrived in the squad car and showed Mavropoulos a firearm he had recovered. At the police station, Farias advised defendant of the *Miranda* rights, and defendant stated that "he was just there drinking some vodka; and he had the weapon on him because things were, f***** up around here." Mavropoulos then identified a photograph and map of the area where defendant was standing when the officers approached him.

¶ 7     On cross-examination, Mavropoulos noted that defendant was the only individual in the group who ran. When he dropped the firearm, he was turning, and had his back toward Mavropoulos.

¶ 8    Farias testified to substantially the same events as Mavropoulos. Farias stated that defendant, whom he identified in court, looked toward the officers when they exited their vehicle and immediately fled on foot. Farias and Mavropoulos followed defendant, with Mavropoulos in the lead, and as defendant ran, he pulled out a dark object and "tossed" it to the ground. The vacant lot where the object landed was very well kept and had short grass. As Mavropoulos continued chasing defendant, Farias shined his flashlight in the lot and saw a black .40 caliber Glock. Farias put on gloves, retrieved the firearm, unloaded it, and found live rounds. He returned to the squad car, located Mavropoulos and defendant, and with other officers, transported defendant to the police station.

¶ 9    At the police station, Farias inventoried the firearm. Defendant was advised of his *Miranda* rights and stated that he had "just got off work, and was drinking some vodka with some friends; and that he had the gun on him, because you know how f***** up these streets are." In court, Farias identified the firearm and the live rounds he recovered, as well as photographs depicting the vacant lot defendant ran through.

¶ 10    On cross-examination, Farias demonstrated how defendant tossed the firearm. The Assistant State's Attorney described Farias's motion for the record, stating that he took his "right hand, and made a sweeping motion across, at chest level, with an open palm at the end." Farias admitted that in his grand jury testimony, he stated that defendant reached into his waistband and "threw [the firearm] up in the air." Further, Farias agreed that the area he and Mavropoulos were patrolling had high gang activity and crime. On redirect examination, Farias stated that defendant's statement at the police station was included in an arrest report.

¶ 11    The State entered a stipulation between the parties that if called, evidence technician Robert Franks would testify that he examined the firearm and did not find fingerprints. The parties further stipulated that defendant had two prior qualifying felony convictions.

¶ 12    During the jury instructions conference, defense counsel submitted that Farias's in-court testimony that defendant "dropped" the firearm contradicted his grand jury testimony that defendant had "thrown" it. The court stated that though the discrepancy was "hardly earth shattering," the testimony was "inconsistent to some slight extent." Therefore, the court agreed to defense counsel's request to instruct the jury about the limited use of prior inconsistent statements.

¶ 13    During closing arguments, defense counsel noted that the officers' testimony did not "exactly make sense" because only one person in a group of 10 to 15 people ran when the officers arrived. Moreover, there were inconsistencies in the officers' testimonies as to when defendant dropped something on the ground, and in Farias's testimony about how defendant had either "dropped [the firearm] to the ground, or tossed it from side to side, or threw it up in the air." Furthermore, defense counsel argued that the area where the incident occurred was a "high crime, high gang area," and there was no reason why a firearm someone had allegedly handled moments before its recovery would not have fingerprints on it. Counsel posited that the officers made a mistake because defendant had not possessed a firearm.

¶ 14    After 55 minutes of deliberation, the jury sent the court a note advising that it was a "hung Jury," with 10 guilty votes, 1 wavering, and 1 not guilty vote. By agreement of the parties, the court instructed the jury to "continue deliberating." Approximately one hour later, the jury found defendant guilty of armed habitual criminal. The trial court denied defendant's motion for a new trial, and following a sentencing hearing, sentenced defendant to 8½ years' imprisonment.

¶ 15                                          ANALYSIS

¶ 16     On appeal, defendant argues that he was not proven guilty of armed habitual criminal beyond a reasonable doubt. According to defendant, no rational trier of fact could have accepted Mavropoulos's and Farias's testimony that he possessed a firearm when their testimony was contrary to human experience, his alleged admission was not memorialized as a statement, and there were no fingerprints on the firearm.

¶ 17     The State maintains that the evidence established defendant's guilt beyond a reasonable doubt where the jury concluded the police officers testified credibly and defendant's admission was included in Farias's arrest report.

¶ 18     When considering a challenge to the sufficiency of the evidence, the reviewing court must consider whether, viewing the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted.) *People v. Belknap*, 2014 IL 117094, ¶ 67. "This standard of review does not allow the reviewing court to substitute its judgment for that of the fact finder on questions involving the weight of the evidence or the credibility of the witnesses." *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). Moreover, "[a] conviction will be reversed only where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *Belknap*, 2014 IL 117094, ¶ 67.

¶ 19     To sustain a conviction for armed habitual criminal, the State must prove the defendant possessed a firearm after having been convicted two or more times of a forcible felony. 720 ILCS 5/24-1.7(a)(1) (West 2016). Here, defendant contests his conviction based on the witnesses' credibility.

¶ 20    The testimony of a single witness, if positive and credible, is sufficient to uphold a conviction. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). Contradictory evidence, or minor or collateral discrepancies in testimony, does not automatically render the totality of a witness's testimony incredible. *People v. Gray*, 2017 IL 120958, ¶ 47; *People v. Peoples*, 2015 IL App (1st) 121717, ¶ 67. That is true whether the fact-finder is considering contradictions or discrepancies within the testimony of a single witness (*Gray*, 2017 IL 120958, ¶ 47), or comparing one person's account to the testimony of another (*Peoples*, 2015 IL App (1st) 121717, ¶ 67). The trier of fact is responsible for determining the credibility of the witnesses, weighing the testimony, resolving conflicts in the evidence, and drawing reasonable inferences therefrom. *Jackson*, 232 Ill. 2d at 281. Moreover, the trier of fact is not required to "accept or reject all of a witness' testimony but may attribute different weight to different portions of it" (*People v. Billups*, 318 Ill. App. 3d 948, 954 (2001)), and "[i]t is sufficient if all of the evidence taken together satisfies the trier of fact beyond a reasonable doubt of the defendant's guilt" (*Jackson*, 232 Ill. 2d at 281 (internal quotation marks omitted)).

¶ 21    In this case, Mavropoulos and Farias testified that they saw a group of people drinking by an abandoned building. As the officers exited their marked vehicle, defendant looked in their direction. Mavropoulos saw defendant immediately "drop" a firearm and run across a vacant lot. Farias, who was behind Mavropoulos, testified defendant "tossed" a dark object while running away, and in explaining defendant's action, gesticulated as if the object had been tossed from side to side. Farias acknowledged that in his grand jury testimony, he stated that defendant "threw" the object "in the air." Mavropoulos pursued defendant on foot, while Farias investigated the area where defendant had dropped the object. Farias shined his light on the short-cut grass and

recovered a loaded firearm. Defendant was placed in custody and taken to the police station, where he was Mirandized, and according to both officers, stated that he had the firearm because things were "f ***** up around here."

¶ 22    Taking Mavropoulos's and Farias's testimony as a whole, the jury could have found that the officers testified credibly. Both officers were subject to cross-examination, and the jury was aware of the discrepancy in their testimony regarding whether defendant dropped the firearm first and then ran or vice versa. *People v. Gustowski*, 102 Ill. App. 3d 750, 753-54 (1981) (discrepancies in the officers' testimony pertaining to how the defendant dropped contraband did not render the trier of fact's credibility determination unreasonable). The jury was also aware that Farias testified at trial that defendant "tossed" the object from side to side, while before the grand jury, he stated defendant "threw" the object "up in the air."

¶ 23    It is the province of the trier of fact to consider the effect of a witness's prior inconsistent statement on the credibility of his in-court testimony. *People v. Cosme*, 247 Ill. App. 3d 420, 428 (1993). Here, both witnesses testified that defendant discarded an object, *i.e.*, the firearm, and fled. The jury could reasonably conclude that the manner in which the firearm was discarded and whether defendant was already running were minor discrepancies and did not render the totality of the witnesses' testimony incredible. *Gray,* 2017 IL 120958, ¶ 47; *Peoples*, 2015 IL App (1st) 121717, ¶ 67. Furthermore, when the jury took these inconsistencies together with the other evidence, including the recovered firearm, they were satisfied beyond a reasonable doubt of defendant's guilt. *Jackson*, 232 Ill. 2d at 281. Viewed in the light most favorable to the State, this evidence was sufficient to show that defendant possessed the firearm.

¶ 24    Notwithstanding, defendant contends that the officers' testimony that he removed a weapon from his waistband and discarded it in their presence belies common sense and is inherently unbelievable "dropsy" testimony. Further, he argues that his alleged admission about possessing the weapon for protection is comparable to "dropsy" testimony and is also against human experience.

¶ 25    In so-called "dropsy" cases, defendants allege that to avoid the exclusion of improperly obtained evidence, officers claim that the defendants dropped contraband in plain view. *People v. Campbell*, 2019 IL App (1st) 161640, ¶ 20. It is well-established that the testimony of a single witness may be sufficient to convict. *Siguenza-Brito*, 235 Ill. 2d at 228. Here, a rational trier of fact could find that the officers' testimony regarding defendant's conduct in discarding the firearm when the officers appeared, and that he stated he had the firearm for protection, was neither improbable nor contrary to human experience.

¶ 26    Defendant next contends the officers' testimony about his admission was incredible because his statement was not memorialized in a signed statement. However, the jury was aware that defendant's admission was only presented through the officers' testimony, and it was the jury's function to determine the weight to be given to that testimony. *People v. Evans*, 209 Ill. 2d 194, 211 (2004). Moreover, defendant cites no relevant authority for his conclusion that a statement must be memorialized in order to be believable. A point raised in a brief but not cited with relevant authority fails to satisfy the requirements of Supreme Court Rule 341(h)(7) (Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018)), and is, therefore, forfeited. *People v. Hunt*, 234 Ill. 2d 49, 67 (2009). Here, both officers testified consistently about defendant's statement that he had the firearm because the streets were "f***** up." While defendant also claims that the firearm

recovered from the lot was not the same weapon referenced in his statement, on review, "all reasonable inferences from the evidence must be allowed in favor of the State." *People v. Baskerville*, 2012 IL 111056, ¶ 31. Thus, the jury could reasonably find the officers' testimony about defendant's admission to be credible, and this court will not substitute its judgment on that determination. *Belknap*, 2014 IL 117094, ¶ 67.

¶ 27     Defendant also contends that the officers' testimony regarding his admission to possessing the firearm was incredible because the weapon was recovered in a "high crime" area, might not have been attributable to him, and the State did not produce forensic evidence linking him to the weapon.

¶ 28     "[T]he trier of fact is not required to disregard inferences which flow naturally from the evidence before it, nor need it search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." (Internal citation omitted.) *Jackson*, 232 Ill. 2d at 281. As noted, the officers approached the group of people drinking in front of the abandoned building, and defendant was the only person who fled. Both officers saw defendant drop something, and Mavropoulos testified specifically that he saw defendant discard a firearm. The grass in the vacant lot where Farias recovered the firearm was short and very well kept, supporting the inference that any other objects in the lot would have been apparent to Farias when he searched the area. Further, though Farias testified that the area had high gang activity and crime, nothing in the record supported defendant's contention that the firearm recovered from the lot was not his or not the same weapon he referenced in his statement. Thus, a rational trier of fact could have found the officers' testimony that the recovered weapon belonged to defendant was credible, and the inferences made by the jury were not unreasonable, improbable, or unsatisfactory. *People v.*

*Brown*, 309 Ill. App. 3d 599, 609 (1999) (evidence that an officer saw the defendant drop an object, a firearm was recovered from where the object was dropped, and no other objects were in the area, was sufficient to show that the defendant possessed the firearm).

¶ 29    Furthermore, the absence of forensic evidence linking defendant to the firearm Farias recovered is not fatal. "Proof of physical evidence connecting a defendant to a crime has never been required to establish guilt." *People v. Williams*, 182 Ill. 2d 171, 192 (1998). To the contrary, if a witness's testimony is otherwise credible, "the State [is] not required to present additional physical evidence" that links a defendant to a firearm. (Internal citation omitted.) *Campbell*, 2019 IL App (1st) 161640, ¶ 33 (affirming conviction where officers testified defendant tossed a firearm in plain view, but the State did not present the firearm or any other forensic evidence linking defendant to the firearm). Here, two officers credibly testified that defendant was the only person who fled when they arrived, defendant discarded a firearm, and Farias recovered a loaded weapon in the lot where they saw defendant discard it. Therefore, further physical evidence linking defendant to the firearm was not necessary for the jury to find defendant guilty beyond a reasonable doubt.

¶ 30    Finally, defendant claims that the jury's note to the court stating it was a "hung jury," sent after 55 minutes of deliberation, shows that the officers' testimony about the recovery of the firearm and defendant's unrecorded confession was incredible and "clearly troubled the jurors." Defendant's contention is conclusory and unsupported by the record, as he cites no authority suggesting the length of jury deliberations bears on the sufficiency of the evidence. Defendant therefore fails to satisfy the requirements of Supreme Court Rule 341(h)(7) (eff. May 25, 2018), and his contention is forfeited. *Hunt*, 234 Ill. 2d at 67. Moreover, nothing else in the record suggests

the jurors were troubled by the trial evidence, and as we have explained, defendant's sufficiency of the evidence argument also fails on the merits.

¶ 31                                CONCLUSION

¶ 32    For all the foregoing reasons, defendant's challenge to the sufficiency of the evidence is without merit and the judgment of the trial court is affirmed.

¶ 33    Affirmed.