# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Harper*, 2012 IL App (4th) 110880

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. LAFAYETTE L. HARPER, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-11-0880 |
| Argued<br>Filed | April 25, 2012<br>May 25, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for first degree murder, the trial court erred in suppressing a digital video disc and transcript of an interview with defendant without making sufficient findings as to whether defendant's custodial statements were inadmissible under section 103-2.1 of the Code of Criminal Procedure, since the trial court misinterpreted section 103-2.1, which requires the recording of interrogations in murder cases, to provide that an innocent malfunction of the recording equipment, as in defendant's case, was sufficient to warrant suppression; therefore, the cause was remanded for a determination of whether the State established by a preponderance of the evidence that defendant's statements were dependable and fit to be relied upon based on the totality of the circumstances, and if not, the statements are inadmissible. |
| Decision Under Review | Appeal from the Circuit Court of Vermilion County, No. 10-CF-647; the Hon. Claudia S. Anderson, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on Appeal      Randall Brinegar, State's Attorney, of Danville (Patrick Delfino, Robert J. Biderman, and Anastacia R. Brooks (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Michael J. Pelletier, Karen Munoz, and Nancy L. Vincent (argued), all of State Appellate Defender's Office, of Springfield, for appellee.

Panel      JUSTICE POPE delivered the judgment of the court, with opinion.
Presiding Justice Turner concurred in the judgment and opinion.
Justice Cook dissented, with opinion.

**OPINION**

¶ 1      In September 2011, the trial court suppressed a video recording and related transcript from an interview of defendant, Lafayette L. Harper. The court reserved ruling on whether the police officers who questioned defendant could testify regarding his statements. The State appeals and filed a certificate of impairment.

¶ 2      We find the trial court (1) erred in interpreting section 103-2.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/103-2.1 (West 2008)) and (2) made insufficient findings to determine whether defendant's custodial statements are inadmissible pursuant to section 103-2.1 of the Code before it suppressed the digital video disc (DVD) recording and the transcript of the DVD recording pursuant to section 103-2.1 of the Code. We reverse the court's ruling suppressing the DVD recording and transcript pursuant to section 103-2.1 of the Code and remand for further proceedings.

¶ 3                 I. BACKGROUND

¶ 4      In November 2010, the State charged defendant with four counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2), (a)(3) (West 2008)) as a result of the death of Timothy A. Shutes, Jr. In June 2011, defendant filed a motion to suppress a statement he gave to police pursuant to section 103-2.1 of the Code (725 ILCS 5/103-2.1 (West 2008)) because approximately 30 minutes and 12 seconds of the audio portion of the electronic recording of the interview is inaudible. The motion stated the portion of the interview containing audio is approximately 78 minutes and 21 seconds.

¶ 5      Based on our review of the electronic recording, defendant was in the interview room for over three hours. The entire three hours is recorded on video. The police officers were in the room with defendant just over 1 hour and 45 minutes. The recording is without audio for just under 29 minutes of the 105 minutes the police officers were with defendant in the interview room.

¶ 6      The trial court held a hearing on defendant's motion to suppress on September 1, 2011.

At the hearing, defendant testified he was in class at the Concept College of Cosmetology on November 2, 2009, at 10 a.m. when Matt Wells, defendant's parole officer, Sergeant Campbell, and Detective Bransford came to talk to him. Wells told him to go with the two police officers. Defendant testified he did not feel as if he had a choice but to go with the officers because his parole officer told him to do so. However, defendant was not handcuffed.

¶ 7        The police officers took defendant to the public safety building in an unmarked police vehicle and then escorted him to an 8- by 10-foot interview room. After he was placed in the room, the door was locked. Defendant testified he knew the door was locked because he had to knock on the door if he needed something. He did not feel free to leave. At one point, he was escorted to and from the restroom. He was advised of his *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436 (1966)) and signed a warning and waiver form. Defendant agreed to speak with the officers. The trial court found defendant was in custody at the time of his interrogation.

¶ 8        Officer Josh Campbell testified he activated the recording system after defendant was placed in the interrogation room and the door was closed. He testified:

>      "The camera in the interview room is monitored, the recording system, everything, the computer is in a separate room. We turn the computer on. We can see everything from that room as far as what's going on into the interview room. There's also a speaker system in there where you can monitor what's being said. I would have activated that, hit the record and then went into the interview room and proceeded with the interview."

The recording is saved digitally on the hard drive of the computer. The interview is then "burned" on to a compact disc (CD) or DVD.

¶ 9        Officer Campbell testified he wrote a three-page supplemental report regarding defendant's interview, which he prepared by reviewing his notes, the recorded interview, and his memory. According to Campbell, the recording was not intentionally altered in any way. Campbell stated audio of approximately 30 minutes of the actual interrogation was missing from the recorded interview, apparently due to a malfunction.

¶ 10       Detective Bransford agreed on cross-examination approximately 58 minutes of the DVD recording is missing audio. During 28 of those 58 minutes, defendant was in the interrogation room alone. During the remaining 30 minutes, the officers are interviewing defendant. According to Bransford, no one intentionally altered the recording in any way.

¶ 11       The State argued, and the trial court agreed, defendant's statement was voluntarily given. The State also argued defendant's statement was reliable.

¶ 12       In ruling on the motion, the trial court found the police officers did not purposefully or deliberately alter the recording. However, the court further found the statute did not require deliberate alteration. The court found the issue was the operation of the recording equipment. According to the court:

>      "In the case at bar it's very clear that the audio on this DVD was not functioning properly. *** And there's no question from what I've read and what I've heard today that this was the result of simple equipment failure, perhaps operator but not something that was purposeful.

-3-

The statute, of course, is applicable to this case, and it would seem to me based upon my discussion here this afternoon and my prior review of both the written statement and the recording, that, in fact, there is 30 minutes and about 12 seconds of inaudible–or of the interview which is inaudible and I find that that is a substantial amount of time. And what concerned me even more is that when I reviewed that statement, when you get to page 38, and I'm just using that because, of course, I don't have the DVD operating as I speak, but when you get to that portion of the transcript, after I've read up to that page it appears to the Court that that's where the meat of this really is starting. That's when Mr. Harper is really being questioned as to the investigator's conversations with other witnesses and what they had said, and at this point they begin to, it looks to the Court, as if they begin to start now questioning Mr. Harper about statements they had taken from other witnesses that might vary or be different from his. And then, of course, it just drops off the edge of the earth and we're somewhat lost. To me that renders the *recording* untrustworthy and unreliable as a whole.

So the Court does grant the Defendant's Motion to Suppress. But I want you to understand I'm reserving for later ruling the admissibility of evidence that might have been gathered during the interrogation or during the investigation in alternative forms, of course, subject to rules of evidence that might apply, cause I don't believe that I can do that in a vacuum today. ***

But I also want to be clear that since the statute requires the electronic recording of such a custodial interrogation, my ruling encompasses not just the DVD but the transcription of the DVD which the Court finds, to the extent I necessarily have to, has the same problem of a lack of reliability and trustworthiness.

So I am making those findings based upon the totality of the circumstances in this particular case and I fully understand and expect and perhaps it's more administratively appropriate that the State has the right certainly at this point if they wish to take an interlocutory appeal to have the Court's ruling today reviewed well in advance of any time that we would need to proceed to trial.

So that will stand as the ruling of the Court." (Emphasis added.)

While the court appears to have based its suppression of the videotaped interview and the transcript on section 103-2.1 of the Code (725 ILCS 5/103-2.1 (West 2008)), the court specifically stated it was not ruling on whether the police officers could testify as to defendant's statements at the custodial interrogation.

¶ 13    In September 2011, the State filed a motion to reconsider, which the trial court denied.

¶ 14    This interlocutory appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16                                    A. Jurisdiction

¶ 17    Defendant argues this court does not have jurisdiction over this appeal because the appeal is premature pursuant to Illinois Supreme Court Rule 271 (eff. Jan. 1, 1967), which states, "When the court rules upon a motion other than in the course of trial, the attorney for the

prevailing party shall prepare and present to the court the order or judgment to be entered, unless the court directs otherwise." In this case, the State filed its appeal before defendant, as the prevailing party, had prepared and presented an order to be entered to the trial court.

¶ 18    While appearing among the supreme court rules for civil appeals, the rule is also applicable to criminal appeals. *People v. Maynard*, 393 Ill. App. 3d 605, 607, 912 N.E.2d 1281, 1282 (2009). In *Maynard*, this court found it did not have jurisdiction over the State's interlocutory appeal pursuant to Rule 271 because the State filed its appeal prior to the defendant presenting the trial court the order to be entered. *Maynard*, 393 Ill. App. 3d at 607-08, 912 N.E.2d at 1282-83.

¶ 19    However, the situation in the case *sub judice* is distinguishable from *Maynard*. The trial court in *Maynard* conducted a hearing on the defendant's motion to suppress statements and accepted written arguments from the parties.

> "In a letter decision dated December 4, 2008, the court (1) granted the motion and suppressed the statements, and (2) directed defense counsel to prepare a written order 'in conformance with this letter decision and submit it to me for signature.' The State filed a notice of appeal on the same day, December 4, 2008.
>
> Defense counsel prepared an order granting the motion and suppressing the statements. The trial court entered the order on December 10, 2008. The State did not file a notice of appeal after December 10, 2008." *Maynard*, 393 Ill. App. 3d at 607, 912 N.E.2d at 1282.

¶ 20    In this case, in addition to failing to direct defendant to present an order to the court, the trial court stated its oral pronouncement would "stand as the ruling of the Court." The trial court was essentially informing the parties a written order was not needed. As a result, defendant did not need to present an order to the court prior to the State filing its appeal for this court to obtain jurisdiction, as this situation falls under the Rule 271 language "unless the court directs otherwise."

¶ 21            B. Suppression of Evidence Pursuant to Section 103-2.1

¶ 22    We apply a bifurcated standard of review when reviewing a court's ruling on a motion to suppress, reviewing a trial court's factual findings under a manifest weight of the evidence standard of review but applying a *de novo* standard of review to the ultimate question whether the evidence should be suppressed. *People v. Bonutti*, 212 Ill. 2d 182, 188, 817 N.E.2d 489, 492 (2004).

¶ 23    The trial court based its ruling on section 103-2.1 of the Code (725 ILCS 5/103-2.1 (West 2008)). The court stated, "Let's make clear on this record that the statute in issue is 725 ILCS 5/103-2.1." However, in actuality, the court made a ruling more in the nature of an order *in limine*, barring the State's use of the DVD recording and the transcript of the recording because approximately 30 minutes of audio is missing from the interview.

¶ 24    The dissent erroneously asserts the trial court ruled all statements made by defendant during the custodial interrogation were excluded in whatever form the statements could be offered. According to the dissent:

"The majority complains that the trial court 'specifically stated it was not ruling on whether the police officers could testify as to defendant's statements at the custodial interrogation.' [Citation.] A fair reading of the judge's order, expressed only orally, indicates the judge was referring to evidence that ' "might have been gathered during *** the investigation in alternative forms." ' " *Infra* ¶ 47.

The trial court specifically stated, "But I want you to understand I'm reserving for later ruling [on] the admissibility of evidence that might have been gathered *during the interrogation* or during the investigation in alternative forms, of course, subject to rules of evidence that might apply ***." (Emphasis added.) As is clear from this statement, the court had not barred the State from introducing evidence regarding statements made by defendant during the custodial interview. Instead, it reserved its ruling on this issue. The trial court only ruled the State could not use the DVD recording of the interrogation or the transcript of the audible portion of the interview.

¶ 25 Section 103-2.1 deals with the admissibility of a defendant's *statements* during a custodial interrogation in a case such as this one. The General Assembly's concern in passing section 103-2.1 was not the evidentiary method the State would use to introduce a defendant's statement. Its concern was the State's use of the custodial statements.

¶ 26 Defendant based his motion on section 103-2.1, asking for his statements to be suppressed. However, the trial court did not suppress all evidence of defendant's statements to the police. Instead, the court only ruled the DVD recording and transcript of the interview were inadmissible. The court reserved ruling on "the admissibility of evidence that might have been gathered during the interrogation." Section 103-2.1 concerns the admissibility of a defendant's statements. If a defendant's statements are inadmissible under section 103-2.1, the State cannot introduce them in its case in chief, including through the testimony of the interrogating police officers or a written summary prepared by the interrogating officers.

¶ 27 The cardinal rule of statutory interpretation is to interpret the statute as the legislature intended. The best indicator of legislative intent is the plain language of the statute. The only time a court should go beyond the plain language of a statute to determine legislative intent is if the statute is ambiguous. *LaSalle Bank National Ass'n v. Cypress Creek 1, LP*, 242 Ill. 2d 231, 237, 950 N.E.2d 1109, 1113 (2011). Section 103-2.1 states in part:

"(a) In this Section, 'custodial interrogation' means any interrogation during which (i) a reasonable person in the subject's position would consider himself or herself to be in custody and (ii) during which a question is asked that is reasonably likely to elicit an incriminating response.

In this Section, 'place of detention' means a building or a police station that is a place of operation for a municipal police department or county sheriff department or other law enforcement agency, not a courthouse, that is owned or operated by a law enforcement agency at which persons are or may be held in detention in connection with criminal charges against those persons.

In this Section, 'electronic recording' includes motion picture, audiotape, or videotape, or digital recording.

(b) An oral, written, or sign language statement of an accused made as a result of a

-6-

custodial interrogation at a police station or other place of detention shall be presumed to be inadmissible as evidence against the accused in any criminal proceeding brought under Section 9-1, 9-1.2, 9-2, 9-2.1, 9-3, 9-3.2, or 9-3.3 of the Criminal Code of 1961 or under clause (d)(1)(F) of Section 11-501 of the Illinois Vehicle Code unless:

    (1) an electronic recording is made of the custodial interrogation; and

    (2) the recording is substantially accurate and not intentionally altered.

(c) Every electronic recording required under this Section must be preserved until such time as the defendant's conviction for any offense relating to the statement is final and all direct and habeas corpus appeals are exhausted, or the prosecution of such offenses is barred by law.

(d) If the court finds, by a preponderance of the evidence, that the defendant was subjected to a custodial interrogation in violation of this Section, then any statements made by the defendant during or following that non-recorded custodial interrogation, even if otherwise in compliance with this Section, are presumed to be inadmissible in any criminal proceeding against the defendant except for the purposes of impeachment.

(e) Nothing in this Section precludes the admission (i) of a statement made by the accused in open court at his or her trial, before a grand jury, or at a preliminary hearing, (ii) of a statement made during a custodial interrogation that was not recorded as required by this Section, because electronic recording was not feasible, (iii) of a voluntary statement, whether or not the result of a custodial interrogation, that has a bearing on the credibility of the accused as a witness, (iv) of a spontaneous statement that is not made in response to a question, (v) of a statement made after questioning that is routinely asked during the processing of the arrest of the suspect, (vi) of a statement made during a custodial interrogation by a suspect who requests, prior to making the statement, to respond to the interrogator's questions only if an electronic recording is not made of the statement, provided that an electronic recording is made of the statement of agreeing to respond to the interrogator's question, only if a recording is not made of the statement, (vii) of a statement made during a custodial interrogation that is conducted out-of-state, (viii) of a statement given at a time when the interrogators are unaware that a death has in fact occurred, or (ix) of any other statement that may be admissible under law. The State shall bear the burden of proving, by a preponderance of the evidence, that one of the exceptions described in this subsection (e) is applicable. Nothing in this Section precludes the admission of a statement, otherwise inadmissible under this Section, that is used only for impeachment and not as substantive evidence.

(f) The presumption of inadmissibility of a statement made by a suspect at a custodial interrogation at a police station or other place of detention may be overcome by a preponderance of the evidence that the statement was voluntarily given and is reliable, based on the totality of the circumstances." 725 ILCS 5/103-2.1(a) to (f) (West 2008).

¶ 28    The plain language of section 103-2.1 concerns the admissibility of "statements" made during custodial interrogations in certain enumerated types of cases. The General Assembly's intent was to require law enforcement agencies to electronically record custodial interrogations in murder cases to help insure the voluntariness and reliability of statements

made during custodial interrogations. Statements made during a custodial interrogation in a murder case are presumptively inadmissible unless electronically recorded and the recording is "substantially accurate" and not "intentionally altered."

¶ 29   However, the General Assembly clearly did not want an inadvertent failure to record an interview or an error in the recording process to establish an automatic and absolute bar to the State's use of a defendant's statements during a custodial interrogation. This is evidenced by subsection (f) of section 103-2.1 (725 ILCS 5/103-2.1(f) (West 2008)), which states "[t]he presumption of inadmissibility of a statement made by a suspect at a custodial interrogation at a police station or other place of detention may be overcome by a preponderance of the evidence that the statement was voluntarily given and is reliable, based on the totality of the circumstances."

¶ 30   The trial court erred in this case by focusing its attention on the language "intentionally altered" in subsection (b)(2) (725 ILCS 5/103-2.1(b)(2) (West 2008)). The record in this case contains no evidence anyone altered the electronic recording. Even though the trial court positively remarked on the integrity of both police officers and found no evidence the officers did anything untoward or deliberately altered the electronic recording, the court nevertheless focused on the language concerning intentional alterations to the electronic recording. Next, instead of applying the plain meaning of the phrase "intentionally altered," the court turned to the statute's legislative history to determine its meaning.

¶ 31   Based on its review of the legislative history, the trial court surmised the General Assembly did not intend the phrase "intentionally altered" to be given its plain meaning. Instead, the court found the General Assembly meant the exact opposite. In other words, the court found the language "intentionally altered" did not require an intentional alteration of the electronic recording, *i.e.*, an innocent malfunction of equipment was sufficient to suppress defendant's statement. This is not correct.

¶ 32   Instead of focusing on the "intentional alteration" language, the trial court should have examined whether the lack of audio in certain parts of the electronic recording made the recording substantially inaccurate. As to this factor, the intent of the police officers is not relevant. However, the court never specifically found the electronic recording was not "substantially accurate." Even if the court made a finding the *electronic recording* was substantially inaccurate, it still needed to determine whether the State proved "by a preponderance of the evidence [defendant's] *statement* was voluntarily given and is reliable, based on the totality of the circumstances." (Emphasis added.) See 725 ILCS 5/103-2.1(f) (West 2008). During the hearing, when the State presented its argument on this exact point, the trial court stated it agreed defendant's statements were voluntarily given.

¶ 33   The dissent notes the trial court, while explaining its ruling, stated it did not find the exceptions in subsection (f) of section 103-2.1 applied in this case. *Infra* ¶ 48. However, based on the court's explanation of its ruling, we do not believe the trial court correctly interpreted subsection (f) of section 103-2.1. While the court found defendant's statements were voluntary, the court never made a finding pursuant to section 103-2.1(f) whether defendant's *statements* were reliable.

¶ 34   The trial court clearly found the *electronic recording* unreliable as a whole, even though

it contains 78 minutes of apparently accurate video and audio recording. However, determining whether the *statement* is reliable is a completely different question that went unanswered by the court despite both the State and defendant making arguments regarding the reliability of the statement. Having found defendant's statement voluntary, the trial court needed to determine whether defendant's voluntary statement was also reliable under the totality of the circumstances. Merriam-Webster's Collegiate Dictionary 1051 (11th ed. 2003) defines "reliable" as "suitable or fit to be relied on: DEPENDABLE." In determining reliability, the trial court can consider such things as the age and mental capacity of the defendant, the presence or absence of coercion, the length of the interrogation, whether the defendant had been deprived of sleep or food and water or use of a bathroom, whether the defendant–if an addict–was in the throes of withdrawal, and any other factor that may affect the reliability of the statement.

¶ 35 If the trial court finds the State has proved, by a preponderance of the evidence, the defendant's statements were voluntary and reliable under the totality of the circumstances, section 103-2.1 is no bar to their admission.

¶ 36 We decline to make a determination whether defendant's statements to the police were reliable. That is a determination to be made by the trial court. However, on remand, should the trial court determine the electronic recording is not substantially accurate, the court should then determine whether the State established by a preponderance of the evidence defendant's *statement* is dependable and fit to be relied upon based on the totality of circumstances in this case. If not, defendant's statements are inadmissible.

¶ 37 Even though the trial court erred in its application of section 103-2.1 of the Code, defendant argues we can affirm on any basis found in the record. According to defendant, the admissibility of a partially inaudible recording is a matter left to the trial court's discretion. See *People v. Manning*, 182 Ill. 2d 193, 212, 695 N.E.2d 423, 431 (1998); see also *People v. Hunt*, 234 Ill. 2d 49, 67, 914 N.E.2d 477, 486-87 (2009). Defendant argues the court did not abuse its discretion in ruling the DVD recording and transcript are inadmissible.

¶ 38 We recognize our supreme court has held an appellate court can affirm a trial court's decision on a motion to suppress based on any ground of record in an interlocutory appeal. *People v. Johnson*, 208 Ill. 2d 118, 134, 803 N.E.2d 442, 452 (2003). However, we decline to do so where the trial court misinterpreted section 103-2.1 of the Code.

¶ 39 III. CONCLUSION

¶ 40 For the reasons stated, we reverse the trial court's order suppressing the DVD recording and transcript pursuant to section 103-2.1 of the Code (725 ILCS 5/103-2.1 (West 2008)) and remand for further proceedings. We make no ruling with regard to the admissibility of the DVD recording and use of the transcript of the DVD recording on general evidentiary grounds outside of section 103-2.1 of the Code.

¶ 41 Reversed and remanded.

¶ 42    JUSTICE COOK, dissenting:

¶ 43    Statements by a party in this situation were traditionally admissible into evidence, so long as relevant constitutional limitations, such as a *Miranda* warning, were complied with. Ill. R. Evid. 801(d)(2) (eff. Jan. 1, 2011) (excluding an opposing party's admissions or statements from the definition of hearsay). However, section 103-2.1 was enacted in 2003, in response to reports that Area 2 police, headed by commanding officer Jon Burge, had engaged in systematic abuse of suspects during a 13-year period, which included planned torture. See *People v. Orange*, 195 Ill. 2d 437, 445-46, 749 N.E.2d 932 (2001). Section 103-2.1 was unpopular with law enforcement officials and required many adjustments before passage. As then-Senator Obama observed at the third reading of the bill adding section 103-2.1, "So what we've been able to do is craft a measure with the help of the State Police. The Sheriffs' Association, FOP and State's Attorneys have all been involved in these negotiations." 93d Ill. Gen. Assem., Senate Proceedings, Apr. 3, 2003, at 16 (statements of Senator Obama).

¶ 44    Under section 103-2.1, a statement of an accused made as a result of a custodial interrogation "shall be presumed to be inadmissible *** unless: (1) an electronic recording is made of the custodial interrogation; and (2) the recording is substantially accurate and not intentionally altered." 725 ILCS 5/103-2.1(b) (West 2010). Numerous exceptions are set out in section 103-2.1(e), for example where a statement was not recorded "because electronic recording was not feasible," or the suspect requests to respond "only if an electronic recording is not made of the statement." 725 ILCS 5/103-2.1(e) (West 2010). The State has the burden of proving that one of those exceptions is applicable. 725 ILCS 5/103-2.1(e) (West 2010). Finally, there is a safety valve: "(f) The presumption of inadmissibility *** may be overcome by a preponderance of the evidence that the statement was voluntarily given and is reliable, based on the totality of the circumstances." 725 ILCS 5/103-2.1(f) (West 2010). The State argues that the trial judge's interpretation of subsection (f) makes the subsection "nugatory," rendering it impossible to ever apply. Actually, subsection (f) may render the whole of section 103-2.1 nugatory. The presumption of inadmissibility may be overcome if the trial judge simply decides there is no problem? The office of the State Appellate Defender (OSAD) argues that "[t]he State's argument would cause the exception to swallow the rule."

¶ 45    A 30-minute audio portion of the interrogation was missing here. The State argues that is no problem, that section 103-2.1(a) defines "electronic recording" to include a "motion picture," and accordingly a motion picture with no audio satisfies the statute. As the trial judge pointed out, however, the statute provides that a "statement" shall be inadmissible, indicating that the purpose of the "electronic recording" was to record a statement. The trial judge noted that the section includes a "sign language statement." A motion picture of a sign language statement without any audio would appear to be sufficient, but it is hard to understand how a motion picture, without audio, of a spoken statement satisfies section 103-2.1. The argument could be made that the concern behind section 103-2.1 was "torture," and a motion picture without audio could establish there was no torture. The section is broader than that, however, expressing concerns for the accuracy of the recording and the reliability of the statement.

¶ 46 The State argues that "the trial court never made any explicit determination, by a preponderance of the evidence, that defendant's custodial interrogation violated the statute." I disagree. The trial judge addressed the two requirements of subsection (b)(2), whether the recording is "substantially accurate" and "not intentionally altered." The trial judge found that the officers had not purposefully and deliberately altered the recording to remove 30 minutes of audio. She also found that the legislation did not require that. The essential question to the trial judge was "whether the inaudible portions are so substantial as to render the recording untrustworthy as a whole." She concluded that they were. Not only was a substantial amount of the interview inaudible, but when you get to the missing portion "that's where the meat of this really is starting." That's where defendant is being questioned "about statements they had taken from other witnesses that might vary or be different from his. And then, of course, it just drops off the edge of the earth and we're somewhat lost. To me that renders the recording untrustworthy and unreliable as a whole."

¶ 47 The majority complains that the trial court "specifically stated it was not ruling on whether the police officers could testify as to defendant's statements at the custodial interrogation." *Supra* ¶ 12. A fair reading of the judge's order, expressed only orally, indicates the judge was referring to evidence that " 'might have been gathered during *** the investigation in alternative forms.' " *Supra* ¶ 12 (quoting trial judge). When the trial judge mentioned "evidence that might have been gathered during the interrogation," she immediately amended her comment by saying "or during the *** investigation in alternative forms," a phrase she had used earlier. If defendant had made a statement in the squad car after his arrest, or made a statement while he was being escorted back to his cell after the custodial interrogation, would that statement be admissible? Or if defendant had stated during the interrogation, "I hid the gun in my neighbor's yard," could the police seize the gun, and could it be admitted into evidence? The trial judge properly reserved ruling on such statements, because "I don't believe that I can do that in a vacuum today." The trial court ruled that the custodial interrogation was excluded in whatever form it was offered, "not just the DVD but the transcription of the DVD."

¶ 48 The majority complains that "the court never specifically found the electronic recording was not 'substantially accurate.' " *Supra* ¶ 32. The major question for the trial court was the effect of the missing portion of the audio recording. The fact that a portion of the audio was missing did not automatically render the remainder inadmissible. "However, what was important to me is that the [*Hunt*] Court in discussing the admissibility of a partially inaudible sound recording noted the question to be resolved is in the sound discretion of the trial court, and that is whether the inaudible portions are so substantial as to render the recording untrustworthy as a whole." That was a proper analysis. See *People v. Hunt*, 234 Ill. 2d 49, 66, 914 N.E.2d 477, 486 (2009). Again, the court concluded that the inaudible portions were critical and rendered "the recording untrustworthy and unreliable as a whole." The recording was not "intentionally altered," but it was "substantially inaccurate." Again, there is some overlap between section 103-2.1(b)(2) and section 103-2.1(f). If a recording is not "substantially accurate," can it still be "reliable"? The trial judge did specifically find that none of the exceptions set out in subsection (f) applied to this case.

¶ 49 We should give deference to the ruling of the trial judge and affirm her ruling that the

-11-

custodial interrogation here violated section 103-2.1 and that the statements taken during that custodial interrogation should be excluded, and reserving ruling on any other items of evidence gathered during the investigation.