# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Harper*, 2013 IL App (4th) 130146

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. LAFAYETTE L. HARPER, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-13-0146 |
| Filed<br>Rehearing denied | December 18, 2013<br>January 16, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's order suppressing, pursuant to section 103-2.1 of the Code of Criminal Procedure, both a DVD recording of defendant's statement to the police during a custodial interrogation and the transcript of the recording was reversed, notwithstanding the fact that 30 minutes of the recording were not audible, since the State overcame the presumption of admissibility by establishing that the statements were admissible by a preponderance of the evidence, especially when the recording malfunction was accidental, not nefarious, and the trial court found that the police officers had done nothing untoward in this case. |
| Decision Under Review | Appeal from the Circuit Court of Vermilion County, No. 10-CF-647; the Hon. Claudia S. Anderson, Judge, presiding. |
| Judgment | Reversed and remanded. |

| | |
|---|---|
| Counsel on Appeal | Randall Brinegar, State's Attorney, of Danville (Patrick Delfino, Robert J. Biderman, and Anastacia R. Brooks, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| | Michael J. Pelletier, Karen Munoz and Nancy L. Vincent, all of State Appellate Defender's Office, of Springfield, for appellee. |
| Panel | JUSTICE POPE delivered the judgment of the court, with opinion. Presiding Justice Appleton and Justice Turner concurred in the judgment and opinion. |

**OPINION**

¶ 1    On remand from this court's opinion in *People v. Harper*, 2012 IL App (4th) 110880, 969 N.E.2d 573, the trial court issued a written order, suppressing statements defendant made during his custodial interrogation. The State appeals, arguing the court erred in suppressing this evidence pursuant to section 103-2.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/103-2.1 (West 2008)). We reverse the trial court's suppression order and remand for further proceedings, holding the court erred in finding defendant's statements were not reliable.

¶ 2                              I. BACKGROUND

¶ 3    As this court discussed the circumstances leading to the prior appeal in detail in the first opinion in this case (*Harper*, 2012 IL App (4th) 110880, ¶¶ 4-14, 969 N.E.2d 573), we need not repeat them here. This court reversed the trial court's ruling suppressing the digital video disc (DVD) recording and the transcript of the DVD recording, finding the court "(1) erred in interpreting section 103-2.1 of the Code *** and (2) made insufficient findings to determine whether defendant's custodial statements are inadmissible pursuant to section 103-2.1 of the Code." *Id.* ¶ 2, 969 N.E.2d 573. This court remanded the case, directing the trial court to determine (1) whether the electronic recording is substantially accurate, and, if not, (2) "whether the State established by a preponderance of the evidence defendant's *statement* is dependable and fit to be relied upon based on the totality of circumstances in this case." (Emphasis in original.) *Id.* ¶ 36, 969 N.E.2d 573.

¶ 4    According to this court's opinion:

      "The trial court erred in this case by focusing its attention on the language 'intentionally altered' in subsection (b)(2) (725 ILCS 5/103-2.1(b)(2) (West 2008)). The record in this case contains no evidence anyone altered the electronic recording. Even

though the trial court positively remarked on the integrity of both police officers and found no evidence the officers did anything untoward or deliberately altered the electronic recording, the court nevertheless focused on the language concerning intentional alterations to the electronic recording. ***

***

Instead of focusing on the 'intentional alteration' language, the trial court should have examined *whether the lack of audio in certain parts of the electronic recording made the recording substantially inaccurate.* [(Emphasis added.)] As to this factor, the intent of the police officers is not relevant. However, the court never specifically found the *electronic recording* [(emphasis added)] was not 'substantially accurate.' Even if the court made a finding the *electronic recording* was substantially inaccurate, it still needed to determine whether the State proved 'by a preponderance of the evidence [defendant's] *statement* was voluntarily given and is reliable, *based on the totality of the circumstances*.' (Emphasis added.) ***

***

The trial court clearly found the *electronic recording* [(emphasis in original)] unreliable as a whole, even though it contains 78 minutes of apparently accurate video and audio recording. However, determining whether the *statement* [(emphasis in original)] is reliable is a completely different question that went unanswered by the court despite both the State and defendant making arguments regarding the reliability of the statement. Having found defendant's statement voluntary, the trial court needed to determine whether defendant's voluntary statement was also reliable under the totality of the circumstances. *** In determining reliability, the trial court can consider such things as the age and mental capacity of the defendant, the presence or absence of coercion, the length of the interrogation, whether the defendant had been deprived of sleep or food and water or use of a bathroom, whether the defendant–if an addict–was in the throes of withdrawal, and any other factor that may affect the reliability of the statement." *Id.* ¶¶ 30-34, 969 N.E.2d 573.

¶ 5        On remand, the trial court allowed the parties to file written briefs on the issue. On December 24, 2012, defendant filed a motion to suppress his statements pursuant to section 103-2.1 of the Code (725 ILCS 5/103-2.1 (West 2008)). Defendant argued his entire statement should be suppressed because the inaudible section of the electronic recording violated section 103-2.1 of the Code (725 ILCS 5/103-2.1 (West 2008)). Defendant recognized, however, no Illinois court had decided whether a partially inaudible video recording of a custodial interrogation violates section 103-2.1.

¶ 6        The State argued the trial court should find the recording was substantially accurate. In the alternative, the State argued it had "overcome the presumption of inadmissibility by proving by a preponderance of the evidence the defendant's statement was voluntary and reliable."

¶ 7        On February 1, 2013, the trial court issued a written order. Although the order is somewhat confusing, the trial court found the "electronic recording" of defendant's custodial interview was "substantially inaccurate." The court still found defendant's statements were

voluntarily provided. However, the court found the State failed to meet its burden of establishing by a preponderance of the evidence defendant's statements were reliable.

¶ 8    This appeal followed.

¶ 9                                    II. ANALYSIS

¶ 10   As stated in the first decision in this case, a reviewing court applies a bifurcated standard of review when reviewing a court's decision to suppress evidence. *Harper*, 2012 IL App (4th) 110880, ¶ 22, 969 N.E.2d 573. We review a trial court's factual findings using a manifest-weight-of-the-evidence standard but apply a *de novo* standard of review to the ultimate question of whether the evidence should be suppressed. *People v. Bonutti*, 212 Ill. 2d 182, 188, 817 N.E.2d 489, 492 (2004).

¶ 11   On remand, the trial court issued a 2 1/2-page order on the issue of whether section 103-2.1 of the Code (725 ILCS 5/103-2.1 (West 2008)) barred defendant's statements made during the interrogation at issue in this appeal. The parties are not in complete agreement as to the meaning and effect of the trial court's order. However, neither the State nor defendant sought clarification from the trial court. As stated earlier, the order is somewhat confusing but, nevertheless, contains a finding the State failed to prove defendant's statements were reliable.

¶ 12   At issue in this appeal is whether section 103-2.1 of the Code (725 ILCS 5/103-2.1 (West 2008)) bars the State from introducing defendant's statements because part of the recording of the statements is without audio. Section 103-2.1 states in pertinent part:

> "(b) An oral, written, or sign language statement of an accused made as a result of a custodial interrogation at a police station or other place of detention shall be presumed to be inadmissible as evidence against the accused in any criminal proceeding brought under Section 9-1, 9-1.2, 9-2, 9-2.1, 9-3, 9-3.2, or 9-3.3 of the Criminal Code of 1961 or under clause (d)(1)(F) of Section 11-501 of the Illinois Vehicle Code unless:
>
> (1) an electronic recording is made of the custodial interrogation; and
>
> (2) the recording is substantially accurate and not intentionally altered.
>
>                                    * * *
>
> (f) The presumption of inadmissibility of a statement made by a suspect at a custodial interrogation at a police station or other place of detention may be overcome by a preponderance of the evidence that the statement was voluntarily given and is reliable, based on the totality of the circumstances." 725 ILCS 5/103-2.1 (West 2008).

¶ 13   We start with the basic principles governing the admissibility of a defendant's custodial statements to police officers. Pursuant to Illinois Rule of Evidence 801(d)(2) (eff. Jan. 1, 2011), a defendant's out-of-court statements generally are not covered by the rules against hearsay and thus are admissible at his trial. However, if a defendant is in custody, he must be given his *Miranda* warnings before the police may question him. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). If a defendant receives his *Miranda* warnings and chooses to speak with police officers, his statements are admissible as evidence against him so long as such statements are voluntarily given. *People v. Harris*, 2012 IL App (1st) 100678, ¶ 52, 977

N.E.2d 811 (citing *Miranda*, 384 U.S. at 478). Such statements are put before the trier of fact by testimony of witnesses, often police officers, who heard defendant's statements.

¶ 14 Until 2005, law enforcement officers were not required to record a defendant's custodial statements in any type of case. Section 103-2.1 of the Code (725 ILCS 5/103-2.1 (West 2008)) was enacted following the Report of the Governor's Commission on Capital Punishment (Report). *Harris*, 2012 IL App (1st) 100678, ¶ 51, 977 N.E.2d 811. The Report recommended mandatory recording of custodial interrogations of murder suspects to strengthen confidence in the outcome of capital cases. *Id.* (citing Report, ch. 2, at 19-20 (Apr. 2002)). As the First District noted in *Harris*, the clear intent of the legislature was to ensure statements related to murder investigations were not the result of coercive tactics in a police facility but instead were voluntary and reliable. *Id.*

¶ 15 Under section 103-2.1, an oral, written, or sign language statement of an accused made during a custodial interrogation at a police station is presumptively inadmissible in a murder prosecution unless it was electronically recorded and the recording is substantially accurate and not intentionally altered. 725 ILCS 5/103-2.1(b) (West 2008). Here, we have a defendant who was a suspect in a murder case, in custody at a police station, interrogated by police with video recording capability. In these circumstances, it is clear defendant's interview was required to be electronically recorded. The police officers in this case recorded defendant's interview. However, due to an unintentional equipment malfunction, approximately 30 minutes of the recording where the officers are questioning defendant is missing audio. As a result, the trial court found the recording was not substantially accurate pursuant to section 103-2.1(b)(2) of the Code (725 ILCS 5/103-2.1(b)(2) (West 2008)) and, therefore, presumptively inadmissible.

¶ 16 Section 103-2.1(e) (725 ILCS 5/103-2.1(e) (West 2008)) includes nine specifically enumerated exceptions to the statute. None of those exceptions apply here. That subsection also makes clear the bar to admissibility does not apply to the use of such unrecorded statements strictly for impeachment purposes. 725 ILCS 5/103-2.1(e) (West 2008).

¶ 17 While none of the exceptions found in subsection (e) apply to the situation in this case, section 103-2.1(f) of the Code (725 ILCS 5/103-2.1(f) (West 2008)) allows the State to overcome the presumption of inadmissibility if the State can establish by a preponderance of the evidence the statement was voluntarily given and is reliable based on the totality of the circumstances. *Harris*, 2012 IL App (1st) 100678, ¶ 59, 977 N.E.2d 811. As this court noted in the first appeal, subsection (f) clearly demonstrates the General Assembly did not want to bar statements that were inadvertently not recorded or not recorded in part due to a malfunction of the recording equipment. *Harper*, 2012 IL App (4th) 110880, ¶ 29, 969 N.E.2d 573. Thus, if the State can show by a preponderance of the evidence a defendant's statements were voluntary and reliable, those statements are admissible–even if there is no recording *at all*. *Harris*, 2012 IL App (1st) 100678, ¶ 52, 977 N.E.2d 811 ("the statute declares that voluntary and reliable statements can be admitted even if they are not videotaped").

¶ 18 Whether the *statements* were voluntarily made and whether the *statements* are reliable are two separate questions for the trial court to answer. *Id.* ¶ 66, 977 N.E.2d 811. The trial

court must determine whether the defendant's *statements* are voluntary and reliable, not whether the recording of the interview is reliable and not whether a police summary of defendant's statements in a report is reliable (as the State initially argued in the trial court).

¶ 19    If the record shows defendant's statements were voluntary and reliable, section 103-2.1 does not preclude the officers, who heard defendant's statements, from testifying about those statements, despite the malfunction of the recording equipment. Everyone agrees defendant voluntarily made the statements in question. The recording shows defendant was given his *Miranda* warnings and no compulsion or inducement was used to compel defendant to answer the officers' questions. It also shows defendant waived his *Miranda* rights and agreed to talk to the officers. Voluntariness is not an issue here. Further, the trial court found the recording malfunction was accidental, not nefarious, and remarked positively on the integrity of both of the officers conducting defendant's interview.

¶ 20    However, the court found the State failed to prove defendant's statements were reliable. The Code does not provide a definition for "reliable." However, as stated in the prior opinion:

> "Merriam-Webster's Collegiate Dictionary 1051 (11th ed. 2003) defines 'reliable' as 'suitable or fit to be relied on: DEPENDABLE.' In determining reliability, the trial court can consider such things as the age and mental capacity of the defendant, the presence or absence of coercion, the length of the interrogation, whether the defendant had been deprived of sleep or food and water or use of a bathroom, whether the defendant–if an addict–was in the throes of withdrawal, and any other factor that may affect the reliability of the statement." *Harper*, 2012 IL App (4th) 110880, ¶ 34, 969 N.E.2d 573.

There is some overlap of the factors to be considered when determining voluntariness and reliability. Our supreme court has stated:

> "The test for voluntariness is 'whether the defendant made the statement freely, voluntarily, and without compulsion or inducement of any sort, or whether the defendant's will was overcome at the time he or she confessed.' *People v. Gilliam*, 172 Ill. 2d 484, 500[, 670 N.E.2d 606, 613] (1996). In making this determination, we consider the totality of the circumstances surrounding the statement, including: (1) the defendant's age, intelligence, education, experience, and physical condition at the time of the detention and interrogation; (2) the duration of the interrogation; (3) the presence of *Miranda* warnings; (4) the presence of any physical or mental abuse; and (5) the legality and duration of the detention." *People v. Slater*, 228 Ill. 2d 137, 160, 886 N.E.2d 986, 1000 (2008).

¶ 21    While the trial court found defendant's statements were voluntary, it found the State did not prove by a preponderance of the evidence the statements were reliable. We give the trial court's factual findings on the issues of reliability and credibility great deference. As stated earlier, those findings will be reversed only if they are against the manifest weight of the evidence. However, based on the record in this case, the court's reliability finding is against the manifest weight of the evidence.

¶ 22    As we have stated, voluntariness and reliability are two separate issues. A person who is developmentally disabled or a person who is actively delusional may give a statement of

his or her own free will, but the voluntary statement may not be reliable because of the mental impediments suffered by the individual. Further, the statements of a person deprived of food, water, or sleep also may not be reliable because that person may be inclined to say anything in order to have those deprivations terminated. Hypnosis-induced statements have also been found unreliable. See *People v. Zayas*, 131 Ill. 2d 284, 295, 546 N.E.2d 513, 518 (1989) ("we find that because its reliability is suspect, and it is not amenable to verification due to the fact that even the experts cannot agree upon its effectiveness as a memory-restorative device, a witness' hypnotically induced testimony, other than that of the defendant, is not admissible in Illinois courts").

¶ 23 In this case, the recording, which was viewed by the trial court and by this court, is the strongest evidence defendant's *statements* during his interview, both in the portion of the recording with sound and the portion without, are reliable. The recording at issue has video of defendant throughout the entire interview. The deficiency in this recording is the absence of sound for approximately 30 minutes of the interview.

¶ 24 As a result, this case is distinguishable from the First District's recent decision in *Harris* where the State contended a completely unrecorded statement by the defendant in that case was admissible because the defendant provided voluntary and reliable statements in later recorded interviews. *Harris*, 2012 IL App (1st) 100678, ¶¶ 46, 62, 977 N.E.2d 811. According to the State, the defendant's voluntary and reliable statements in the later recorded interviews established her statements in the earlier unrecorded interview were also voluntary and reliable. *Id.* ¶ 62, 977 N.E.2d 811. Finding no stipulation to the voluntariness or reliability of the defendant's earlier statement and finding the trial court did not fully address this issue, the First District remanded the case and directed the trial court to consider the voluntariness and reliability of defendant's earlier statement, noting the reliability of a defendant's statement is a separate inquiry from the determination whether the statement was voluntary. *Id.* ¶¶ 64-66, 977 N.E.2d 811.

¶ 25 We note the trial court here found defendant's statements were voluntary, the police officers were persons of high integrity, and the lack of audio on a portion of the recording resulted from an innocent malfunction of the recording equipment. Based on the record before this court, we agree defendant voluntarily made the statements. Further, nothing in the record shows the trial court's findings with regard to the officers' integrity or the recording equipment is against the manifest weight of the evidence.

¶ 26 This case does not involve an interview that was not recorded at all. The trial court was able to see, although not hear, the entire interview. We have also viewed the videotape. The video recording is quite telling as to defendant's state of mind and how he was treated by the officers.

¶ 27 The record in this case contains ample evidence to show defendant's statements were both voluntary *and* reliable. Unlike in *Harris*, the officers in this case recorded the initial interview. In *Harris*, the initial interrogation was not recorded at all. *Id.* ¶ 46, 977 N.E.2d 811. Further, in *Harris*, the State did not present evidence concerning the voluntariness or reliability of defendant's initial statement made after hours of interrogation. *Id.* ¶ 64, 977 N.E.2d 811. For example, in *Harris*, the State presented neither evidence of the defendant's

physical or mental state at the time of her initial interview nor testimony about whether the defendant was given food and water or allowed to use the restroom. *Id.* Further, it was unclear whether the defendant was provided proper *Miranda* warnings and knowingly and intelligently waived her *Miranda* rights. *Id.*

¶ 28 In the case before this court, while defendant was clearly confined to the interview room, he was not handcuffed or restrained from movement in any other manner. He was allowed to smoke in the interview room, and it appears he was allowed to keep a pack of chewing gum or mints, of which he partook during the interview. Defendant was also allowed to use the restroom and was given a cup of water.

¶ 29 The police officers provided defendant with his *Miranda* warnings on the recording, and defendant waived his rights on the recording. The recording clearly shows defendant was not physically abused in any manner, nor were any other coercive tactics applied to defendant. From the video, defendant appears to be an adult of at least average intelligence. He also appears to be sober and not under the influence of any drugs. Further, the interview did not take place after a late-night arrest on the street. The police officers approached defendant at 10 a.m., while he was in class at the Concept College of Cosmetology. In addition, no questionable memory enhancement techniques such as hypnosis, which might render a suspect's statements unreliable, were used on defendant. Finally, the officers, whom the trial court found to be of high integrity, do not claim defendant made any inculpatory statements during the interview. In fact, defendant was released after the interview.

¶ 30 The recording of the interview and the testimony of the police officers establish by a preponderance of the evidence defendant's statements during the interview were both voluntary and reliable for purposes of section 103-2.1(f) of the Code (725 ILCS 5/103-2.1(f) (West 2008)). Defendant offers nothing to rebut the evidence his statements were voluntary and reliable. Defendant does not contend he was mentally ill, lacked average intelligence, or was under the influence of any substance that could affect the reliability of his statements. The trial court's finding the State failed to meet its burden as to the reliability of defendant's statements during the interview is against the manifest weight of the evidence in this case.

¶ 31 Accordingly, we find the trial court erred in suppressing defendant's statements pursuant to section 103-2.1 of the Code (725 ILCS 5/103-2.1 (West 2008)) because the State overcame the presumption of inadmissibility pursuant to subsection (f), establishing by a preponderance of the evidence defendant's statements were both voluntary and reliable. 725 ILCS 5/103-2.1(f) (West 2008). As a result, section 103-2.1 does not bar the State's use of the video recording or statements defendant made during the interview.

¶ 32 This is not the type of situation the General Assembly had in mind when it passed section 103-2.1 of the Code (725 ILCS 5/103-2.1 (West 2008)). As this court stated, "the General Assembly clearly did not want an inadvertent failure to record an interview or an error in the recording process to establish an automatic and absolute bar to the State's use of a defendant's statements during a custodial interrogation." *Harper*, 2012 IL App (4th) 110880, ¶ 29, 969 N.E.2d 573. The trial court clearly found the malfunction of the recording was accidental, not nefarious. Further, the court found the police officers were officers of high integrity and did nothing untoward in this case.

¶ 33     Putting section 103-2.1 aside, whether the recording itself or portions thereof are admissible is a separate question from the admissibility of defendant's statements. Under general evidentiary principles, the trial court can exercise its discretion within the law in ruling on objections made by the parties to the recording itself. See *People v. Hunt*, 234 Ill. 2d 49, 66, 914 N.E.2d 477, 486 (2009); *People v. Manning*, 182 Ill. 2d 193, 212, 695 N.E.2d 423, 431 (1998); *People v. Dougherty*, 160 Ill. App. 3d 870, 876, 513 N.E.2d 2d 946, 950 (1987); *People v. Crenshaw*, 2011 IL App (4th) 090908, ¶ 21, 959 N.E.2d 703. However, section 103-2.1 of the Code (725 ILCS 5/103-2.1 (West 2008)) does not prevent admission of defendant's statements or the partial recording thereof.

¶ 34                              III. CONCLUSION

¶ 35     We reverse the trial court's decision suppressing defendant's statements pursuant to section 103-2.1 of the Code (725 ILCS 5/103-2.1 (West 2008)) and remand this case to the trial court for further proceedings.

¶ 36     Reversed and remanded.