2019 IL App (2d) 190401-U
No. 2-19-0401
Order filed December 27, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff, | ) ) | No. 16 CF 239 |
| v. | ) ) | |
| MELODIE GLINIEWICZ, | ) ) | |
| Defendant-Appellee. | ) ) | Honorable James Booras |
| (The Village of Fox Lake, Intervenor-Appellant.) | ) ) | Judge, Presiding |

PRESIDING JUSTICE BIRKETT delivered the judgment of the court.
Justices Zenoff and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court erred in finding that the State violated a discovery protective order by furnishing copies of police reports and a video of defendant's statements to the Village of Fox Lake in response to a subpoena issued pursuant to the Pension Code. 40 ILCS 5/1-101 *et seq.* (West 2018).  The trial court also lacked jurisdiction to enter an order enjoining the Village and its attorneys from presenting evidence before the Pension Board.

¶ 2    The intervenor-appellant in this case, the Village of Fox Lake (Village), appeals from an injunction order issued by the trial court in the criminal prosecution of defendant, Melodie Gliniewicz.  For the following reasons, we reverse.

¶ 3                              A.  BACKGROUND

¶ 4      On September 1, 2015, Lieutenant Charles Joseph Gliniewicz (Joe) of the Fox Lake Police Department was killed by a single gunshot wound to the chest.  The death was originally investigated as a homicide but was later ruled a suicide.  Authorities theorized that Joe took his own life to avoid prosecution for embezzling thousands of dollars from the Fox Lake Police Explorers (Explorers), over which he was a fiduciary.  On January 27, 2016, a Lake County grand jury returned a six-count indictment alleging that defendant (Joe's wife) participated in the scheme to steal funds from the Explorers along with Joe.  On the same day defendant filed an application for a survivor's pension with the Board of Trustees of the Fox Lake Pension Fund (the Board) as Joe's widow.

¶ 5      The Lake County State's Attorney, by his assistants, furnished approximately 12,000 pages of material generated by law enforcement agencies to defendant in discovery as part of the criminal prosecution.  Those agencies included the Lake County Major Crime Task Force, the Village of Fox Lake Police Department and the Federal Bureau of Investigation (FBI).  In addition to photographs and written material, the State also furnished a video recorded interview of defendant conducted by an FBI agent and a police officer.

¶ 6      On February 26, 2016, the trial court issued a "Discovery Protective Order" [1] upon motion of the State pursuant to Supreme Court Rule 415(c), (d) (eff. Oct. 1, 1971).  The order stated that "[t]he State is in possession of the Lake County Major Crimes investigation into the death of Fox Valley Police Lieutenant Charles J. Gliniewiecz" and that the reports were relevant to the

---

[1] The Discovery Protective Order was entered by Judge Rosetti, who later recused herself. The case was then assigned to Judge Booras.

prosecution and defense of defendant. The order provided that "[t]hese records shall be made available to defense counsel***subject to the following restrictions:

"1. No reports herein shall be exhibited, shown, disclosed, or displayed to any person or used in any fashion by any party except in a judicial proceeding or in the performance of official duties by law enforcement, prosecuting officers, court personnel, or defense attorneys.

2. All discovery materials furnished to an attorney shall remain in counsel's exclusive custody and be used only for the purposes of conducting counsel's side of the case.

3. Defense counsel shall not disseminate copies of any reports provided herein to any third parties, except defense counsel may disseminate copies of any relevant reports provided herein to expert consultants and/or expert witnesses. Defense counsel shall provide a copy of this order to any such expert consultant and/or expert witness who receives any reports provided herein, and such expert consultant and/or expert witness shall be bound by the terms of this order.

4. The defendant personally may review the discovered materials in the direct presence and under the direct supervision of defense counsel, investigator, or expert witness as may be necessary for the purposes of assisting in the defense of this case. Under no circumstances shall the defendant personally be given any of the materials or copies of the materials to retain in her possession.

5. The cost of making any duplicates of reports shall be borne by the defendant, unless otherwise ordered by the court.

6. The defense shall not reveal any medical related information.

7. A copy of this protective order shall accompany any copy made of the discovered materials and shall be maintained by the Clerk on the outside of any container holding such evidence by the Court."

¶ 7 The Village intervened in the pension proceedings in order to contest defendant's eligibility for the survivor pension. At the request of the Lake County State's Attorney, the Village moved to stay the pension proceedings out of concern that the pension proceedings might affect the trial in the criminal case. Defendant objected to the stay of the pension proceedings and advocated for full discovery. Over defendant's objection, on August 25, 2016, the Board granted the Village's motion to stay the pension proceedings pending completion of the criminal case.

¶ 8 On September 7, 2017, defendant filed a motion before the Board to lift the stay. Counsel for defendant/petitioner argued that the delay in the pension case caused a hardship to defendant because "she was not receiving income for the last 842 days" and "the harm to her far outweigh[ed] any harm to the Village or this Board." Counsel for defendant/petitioner also noted that there was a pending motion to dismiss in the criminal case that if granted "could knock out all the charges" and that the "motion *in limine* sort of intervened. So that motion to dismiss still has a little bit further to go after it goes back to trial."[2] Over the Village's objection, based on defendant's representations that "no harm" would come from "having witnesses testify" the Board granted defendant's motion to lift the stay.

---

[2] In appeal No. 2-17-0490 the State filed an interlocutory appeal of the trial court's order granting defendant's motion *in limine* to exclude marital communications recorded from Joe's cell phone in the form of text messages and emails.

¶ 9    On December 2, 2017, the Board, at the request of the Village, issued a subpoena *duces tecum* pursuant to section 136 of the Illinois Pension Code (40 ILCS 5/3-136 (West 2016)) requiring the Lake County State's Attorney's Office to produce the following materials:

"1.  All documents obtained by and produced by the Major Crimes Task Force in their investigation of the death of Joseph Gliniewicz and his financial accounts.

2.  All documents obtained by and produced by the Federal Bureau of Investigation in their investigation of the death of Joseph Gliniewicz and his financial accounts.

3.  All documents obtained by and produced by the Major Crimes Task Force in their investigation of Melodie Gliniewicz and her financial accounts.

4.  All documents obtained by and produced by the Federal Bureau of Investigation in their investigation of Melodie Gliniewicz and her financial accounts.

5.  All documents produced to Melodie Gliniewicz as discovery in her criminal prosecution.

6.  All documents received from Melodie Gliniewicz in discovery as part of her criminal prosecution.

7.  Any transcripts of hearings on defendant's motion to dismiss.

8.  Any other documents, evidence, or witness statements related to the criminal prosecution of Melodie Gliniewicz."

¶ 10    On January 8, 2018, the Board issued an identical subpoena to defendant.  Defendant moved to quash the Board's subpoena arguing in part that documents requested in "items 1-5 and 8 are documents that are otherwise procurable by the Village."  As to item 6, defendant noted that "the defense has not tendered reciprocal discovery in the criminal case."  Defendant's motion noted that item 7 (transcript of the hearing on the motion to dismiss) "has been tendered to the Village.

As to items 1-5 and 8, defendants cited Supreme Court Rule 415(c), which prohibits defense counsel in the criminal case "from giving copies of those documents to any other party, including the Village." Defendant also attached a copy of the February 26, 2016, protective order entered in the criminal case. The Village withdrew its subpoena *duces tecum* issued to defendant.

¶ 11    On June 19, 2018, the Board ordered, in part, that the parties "exchange subpoenas" on or before July 31, 2018. On June 30, 2018, the Village provided defendant with a copy of the subpoena on the State's Attorney as well as the State's response that included materials from the Task Force investigation that had been furnished in discovery to defendant in the criminal case. Unlike the original materials in possession of the Village, these materials were Bates stamped with the initials of the assistant state's attorney who produced the discovery to defense counsel. The Board ordered the parties to file all pretrial motions on or before August 13, 2018. Defendant did not file a motion before the Board seeking to exclude evidence furnished by the State's Attorney's office in response to the Village's December 27, 2017 subpoena.

¶ 12    On January 17, 2019, defendant filed a "Motion for Discovery Sanctions" in the criminal case. In the motion defendant noted that the "State [had] produced approximately 12,000 pages of discovery, as well as video evidence" and stated that on February 21, 2016, Judge Rosetti "issued a protective order governing the control of certain discovery." Defendant quoted the committee comments to Supreme Court Rule 415(c), which states that "this paragraph establishes a requirement in every case that the material which an attorney receives shall remain in his exclusive custody." In the motion defendant argued that the State "had a duty to keep the discovery material in its exclusive possession and that by responding to the Village's subpoena in the pension case "it violated both Supreme Court Rule and the protective order." Defendant requested that the trial court order the State "to retrieve the discovery given to the Village of Fox Lake and destroy

it." Defendant further requested that "the court can remedy the prejudice suffered by defendant by ensuring that no copies of the discovery in this case exist outside of what is in possession of the State and the defense."

¶ 13    On January 17, 2019, defense counsel sent an email to counsel for the Village in the pension case notifying them that defendant had filed a motion for discovery sanctions in the criminal case. Defense counsel suggested "postponing the scheduled January 31 hearing date" on pre-hearing motions in the pension case until they had a ruling on the motion for sanctions "for reasons that are obvious from the contents of the motion."

¶ 14    On March 5, 2019, the trial court heard arguments on defendant's motion for discovery sanctions. Defense counsel argued that by complying with the Village's subpoena in the pension case, "the State jeopardized her right to a fair trial." Defense counsel explained that he did not believe the court had jurisdiction to hear the motion for sanctions until the mandate was issued in a separate appeal (2017 IL App (2d) 170490) involving a question of marital privilege in cell phone communications between defendant and Joe. Defense counsel argued that the State sought the February 26, 2016, protective order. Counsel argued that the material furnished to the Village by the State "had the State's Bates stamps on it. That's how I know for sure that it was the State's discovery." The trial court asked, "[w]hy would you say that the Village of Fox Lake should not possess this evidence?" Defense counsel responded, "[b]ecause it's criminal discovery, judge." Defense counsel argued that the State did not provide notice to defendant that it received the subpoena from the Village, and "[t]hey owed us a duty to give us notice as did the Village, but your concern here is the State." Defense counsel conceded that the criminal case and the pension case can co-exist "pursuant to the protections that my client's entitled to under the Rule." Counsel suggested that "if they [the Village] can't proceed without this information, they can come back

and attempt after the trial to come over and disqualify my client; but again, I think that goes beyond what your Honor would have direct jurisdiction over here." The trial court asked how "the criminal case was damaged. Defense counsel argued that there was a danger that the jury pool could have been poisoned, but "the way it can be prevented is if in the information is retrieved by the State and destroyed, the copies that were given the Village because again Rule 415 says—***." Defense counsel stated that he gave the Village notice and "[t]hey chose not to file and sort of—seek to file any sort of reply or file a special appearance, judge, so I think they waived that." The court asked the State, "[t]hey are not here to contest, Mr. La Rue?" Assistant state's attorney La Rue noted that one of the attorneys for the Village of Fox Lake was in the courtroom and the court commented, "[o]h, he's hiding back there. All right, I will hear from the State."

¶ 15    The State argued that the "State's discovery comes from Fox Lake." The State explained that when the Major Crimes Task Force ended its investigation, the information was given to Fox Lake and that "Fox Lake Village owns the discovery in this case." The State noted that "even if you were to take back everything, we gave to the Fox Lake attorneys, they still have it." The State explained that the protective order was "to ensure that none of the information related to the Task Force investigation of Lieutenant Gliniewicz's death was leaked to the press." The State explained that on August 4, 2016, the State requested that the pension matter be stayed because "[i]t may prejudice the criminal case if you press forward." The State noted that the defense opposed the request for a stay of the pension proceedings. The court said it wanted to know the reason for that. Defense counsel said, "[b]ecause my client has applied for a pension, judge; and she is entitled to due process of that administrative hearing." The State again noted that the "Fox Lake attorneys already have this information. There is no damage whatsoever. They are aware of the protective

order. They haven't disclosed anything." The State maintained that there had been no violation of Rule 415(c) or the protective order, and therefore there was "no basis for this motion."

¶ 16    The trial court stated that it was not concerned about showing reports received in discovery to an expert but was concerned about "poisoning of the jury pool."

¶ 17    Defense counsel suggested that "[i]f they subpoenaed the material just to make sure they have it already, that's okay. Fine, they should have given us notice; but give us back the Bates stamped copies then. We shouldn't be looking in the pension case at Bates stamped material that was tendered in discovery in this case." The trial court announced that "even though there may be a technical violation of the protective order, I do not see any damages incurred by the defense. In other words, no sanctions, monetary sanctions will be imposed." The court stated, "[h]owever, I will require the Pension Board through their attorney, who is present, to return the Bates stamped material to the State should any of that material not be included in the Fox Lake Police Department. Only return the material that is not possessed by the Fox Lake Police Department." Defense counsel sought clarification, stating that "we also asked for relief the videos of the interrogation of my client." Defense counsel noted that the video was conducted at the Round Lake Police Department. Assistant state's attorney La Rue stated that the interrogation was part of the Task Force. The trial court then said that it "did not want that material in possession of the Pension Board *** or anyone not involved with the original generation of those videos and/or the State in fears that that may be subject to FOIA and that may be disseminated before it is introduced in the criminal case and thus somehow poison the jury pool."

¶ 18    The State explained that everything from the Major Crimes Task Force investigation was turned over to the Fox Lake Police Department, which then provided the information to the State. The court then said that it was "extending that protective order to the Fox Lake Police Department,

the Pension Board, Pension Board attorneys, representatives, representatives of the Village, all involved that not [*sic*] to disseminate any of the information contained therein." The court stated, "whatever was not in the possession of the police department shall be returned." It said that the "videotaped confessions" appeared to have been generated by another agency and should not have been given to the Fox Lake Police Department. The State again explained that the Task Force worked for an "individual police department" and did not retain evidence.

¶ 19    The trial court commented that it was "trying to prevent anything from—any damage from occurring." The court said there was "no need for sanctions" except to "extend that protective order." The court stated that "if there is a violation of that, in other words if they did not possess anything before that protective order, then it should be returned, okay."

¶ 20    The trial court asked defense counsel, "[a]re you happy with that, Mr. Morrison, Mr. Smith?" [3] Mr. Morrison responded, "that videotape was never in the possession of Fox Lake as far as I know." Counsel said the Task Force or the FBI had it and "they gave it to the State as discovery in this case." The State again reminded the court that "everything goes to Fox Lake" and that it went through Fox Lake "for everything." The court stated, "[e]ven more, it shall not be used in any way or shape or form."

¶ 21    Defense counsel mentioned "how about the phone records that they just came up with?" The court told the parties to "tailor the order" and to "work out details. Go over the evidence and enumerate what shall be returned or what shall be kept. Both sides I want you to work on that."

¶ 22    The court commented that "[i]f the pension case gets delayed, folks, it was the defendant that initiated the case. It's the defendant." Assistant state's attorney La Rue asked, "[s]hould we

---

[3] Defendant is represented by Donald Morrison and Brian Smith.

order the pension be stayed then, too\*\*\*?" The court noted that it did not have the power to stay the pension proceedings, but said "I certainly have the power to say that no information that is covered by protective order shall be aired during any hearings on the Pension Board." The court stated that "would include the defendant from testifying." The trial court said it was "not granting a stay" and "whether or not this amounts to a stay, it's a different story." Assistant state's attorney La Rue said it was inevitable that if defendant pressed forward with the pension case, information from the criminal case would come out and "[d]efense is on notice that they cannot press forward with the pension case." Defense counsel Smith said, "that's not true" and that the Village's objection to defendant's pension application was a separate issue.

¶ 23    The trial court said that it could not predict the future but the "protective order, which you came in to have it enforced today, is in full force and effect; and everybody should abide by it." This included "[t]he defendant, the defense attorneys, Village, Village attorneys, Pension Board, Pension Board attorneys, everyone should be included." The court then said, "[n]ow, sit down and figure out what gets returned."

¶ 24    On April 5, 2019, the Village of Fox Lake filed a 25-page motion for reconsideration of the trial court's March 5, 2019, bench ruling with respect to defendant's motion for sanctions. Attorneys for the Village filed limited appearances. In its motion the Village pointed out that defendant had been warned that lifting the stay in the pension proceedings might compromise "her constitutional rights to a fair trial and her Fifth Amendment protection against self-incrimination." The Village argued that after aggressively urging the Board to lift the stay and allow for full discovery, "defendant has side-stepped the pension board and sought a court order that effectively gags the Village and the pension board from hearing about evidence of her criminal misconduct" that would curtail her ability to receive pension benefits.

¶ 25    The Village's motion to reconsider pointed out that it had taken steps to protect against public dissemination of the investigation materials. With respect to FOIA requests the Village took the position that the release of information "may taint the jury pool" and "impair defendant's right to a fair trial."

¶ 26    The Village's motion to reconsider argued that defendant had known about the subpoena for the State's discovery material since June 30, 2018, when the Village produced the material that was Bates stamped. The Village argued that by failing to file a motion regarding the material produced by the State in response to its subpoena defendant had "waived any argument to exclude them in the pension proceedings."

¶ 27    The Village also argued that it had not been notified that "it was being considered as a party and/or was facing sanctions for violating the February 26, 2016, protective order." It contended that the trial court's March 15, 2019, instructions, which had not yet been included in a written order, were "improperly directed towards third parties that it did not have jurisdiction over, and this criminal court [did] not have jurisdiction to quash a lawfully issued civil subpoena approximately 16 months after it was served." The Village also claimed that the "court's gag order [was] unconstitutional, especially as it relates to its ability to protect its interests before the pension board."

¶ 28    The Village argued that the trial court did not have personal jurisdiction over it because there was no compliance with the statutory procedure for service of process on a governmental corporation. It also asserted that it was never put on notice through a rule to show cause or any other mechanism "for it to even appear in this forum."

¶ 29    The Village contended that by aggressively urging the Pension Board to move forward on defendant's pension application, defendant had waived any challenge to the Village's subpoena,

regardless of any impact on her "criminal trial rights." The Village also argued that the trial court's expansion of the protective order constitutes an unconstitutional "prior restraint" on speech. Next, the Village argued that neither the State nor the Village violated the rules of discovery or the protective order. The Village argued that the plain language of Supreme Court Rule 415(c) applied to material "which an attorney receives in discovery." The Village maintains that the protective order, by its plain language, was directed to defense counsel. The Village noted that it was already in possession of the Task Force reports and that any additional material supplied by the State in response to its subpoena was not covered by the protective order, as the order covered only the Task Force records. Finally, the Village argued that even if the protective order applied to the State's Attorney's Offices, reports covered by the protective order can be disclosed by the State's Attorney in performance of official duties. Here the State responded to a subpoena issued by the pension board that possesses quasi-judicial powers.

¶ 30 The Village filed a limited appearance to challenge the trial court's jurisdiction and to present its motion to reconsider as well as a motion for a rule to show cause against defendant. On April 10, 2019, the matter was called. The trial court would not allow the Village to argue the motions, stating "[i]f the State is presenting it, fine."

¶ 31 The Village attorney noted that the Village "was also subject of the last order of March 5, 2019 with respect to discovery." The trial court stated, "and that motion was argued by the State, wasn't it? And I may have directed some comments towards the Village expecting the Village to comply with the order." Counsel argued that the "Village has to be a party in order to comply with an order." The trial court disagreed, stating "Well, through the arm of the State, and the court has jurisdiction to makes their orders effective." Defense counsel, Mr. Morrison, stated that he expected the court to rule on defendant's motion regarding text messages and did not respond to

the arguments made by counsel for the Village. The trial court said, "[f]olks, I cannot recognize a third party here. I'm sorry. It's not a civil court." The trial court asked whether the State was "relinquishing their authority." The State responded that the court did mention that the Village "should have been able to appear for any order that affected them." The court commented "[t]hey can be present and here as they were the last time." Counsel for the Village cited *People v. Kelly*, 397 Ill. App. 3d 232, 248 (2009), for the proposition that intervention would be an appropriate vehicle when the court issues orders "against non-third parties." The court again asked the State if it was "relinquishing their authority" and commented "I'm not so sure I can do that." The Village offered to file a petition to intervene "right now." Defense counsel objected, stating that "[i]f they wanted to come and petition to intervene then they should have properly noticed up the petition to intervene." Defense counsel said that "they (the Village) need to properly notice up on a date other than today, with proper notice, and we can go from there." The court heard defendant's "motion *in limine* regarding text messages." Following the hearing the court granted the motion and then recessed to discuss scheduling with the attorneys. Following the recess, the court stated, "[w]e have discussed a possible determination as to the Village's intervention. The parties have assured me that that [*sic*] may be resolved."

¶ 32 On April 23, 2019, the State filed a motion to reconsider the court's ruling on defendant's motion *in limine* regarding text messages. The parties waived argument on the motion, which was continued to that afternoon so the court could read the motion. Assistant state's attorney La Rue indicated that the Village's attorney was present and had "a petition to intervene." The court directed counsel to tender the petition to the clerk. Defense counsel, Mr. Morrison, objected, stating "[w]e weren't given any notice of it." The court then said, "[o]kay. Then I will not allow the filing." The following exchange then took place:

"MR. MORRISON: Thank you.

THE COURT: Give him notice.

MR. MORRISON: Thank you.  See you at 1:30.

THE COURT: It's a civil matter and I just don't want to hear civil matters.  Folks, I don't want to hear civil matters.

MR. MORRISON: Counsel, he just said you don't have to leave to file.  Why are you approaching the clerk?  He said to send proper notice.

THE COURT: Send notice, I said, like the civil court.

MR. DENHAM:  Your honor, I went to the clerk to try to file it this morning.  She said to come up here to have it filed.

MR. MORRISON: He never sent us notice.

MR. DENHAM: I'm not trying to present it today.  I'm just trying to file this today, your Honor.

THE COURT: In order to file it, don't you think if you ask leave of court to file it in open court, that's when you give notice to the other side; say, then and there I shall present myself and seek leave to file the aforementioned appended, or make a reference to it, motion.

MR. MORRISON: Thank you Judge.  See you at 1:30.

THE COURT: If they waive notice, it's a different story.

MR. MORRISON: We don't waive notice."

¶ 33    The case was recalled at 1:30 p.m. on April 23, 2019.  The court denied the State's motion to reconsider.  Defense counsel then commented that the State, the Village and he had a meeting in chambers the last time the case was on the call.  Defense counsel informed the court that they had been unable to come to an agreement.  Counsel said that "defense does have an agreed order

that we think complies with this court's ruling on March 5th, and we're prepared to tender that to the court for entry today." The State responded by requesting that the protective order be withdrawn. Defense counsel objected to the State's request and noted that the reason the State requested the protective order was primarily "to protect the sanctity of the death investigation, but also at this point we have to think about defendant's Sixth Amendment right to a fair trial." The trial court declined to grant the State's request. When defense counsel tried to tender a written order that "merely conforms with the transcripts" the trial court commented, "[m]y ruling is my ruling. It stands. It's transcribed and it's in full force and effect." Defense counsel was allowed to read into the record defendant's proposed order. The State objected to the proposed order, stating that it believed the secondary effect would be to prevent other matters (the pension case) from going forward. The trial court refused to enter defendant's proposed order absent an agreement, but then stated, "[t]hey don't agree. And if there's a violation, then bring it to my attention." The court said that it did not expect any violations but stressed the "court's need to enforce their own orders." The case was continued to May 15, 2019, for a case management conference.

¶ 34 On May 15, 2019, counsel for the Village argued that as a third party subject to the trial court's order, the Village had a right to intervene. The Village argued that the court's ruling "effectively ordered an injunction against the Village of Fox Lake" and that the Village was seeking "reconsideration on that injunction." The Village's counsel said that the Village had no problem staying the pension matter until after the criminal matter was resolved. Counsel argued that defendant was using the criminal case to "undermine the Village's case before the Pension Board." The Village expressed fear that the defendant was going to turn around and ask the

Pension Board for a pension without a full evidentiary hearing. Counsel noted that a full evidentiary hearing was what defendant's counsel had previously requested.

¶ 35    The trial court noted that it had no jurisdiction over the Pension Board. Defense counsel stated, "[y]ou can't stay the pension case." He noted that defendant had not responded to writing to the petition to intervene. The court indicated that defendant would be given 28 days to respond to the motion to intervene. At that point, the assistant state's attorney announced that it was about to file a notice of appeal from the court's order granting defendant's motion *in limine* regarding the text messages. The trial court stated "[e]verything will be at the appellate level" and that it would not "hear anything," including the petition to intervene.

¶ 36    On May 15, 2019, the Village filed a "Notice of Interlocutory Appeal" pursuant to Supreme Court Rules 307 (a) and (b) (eff. Nov. 1, 2017).

¶ 37                                    II.  ANALYSIS

¶ 38    We begin with an examination of our jurisdiction to hear this appeal. The Village appeals from the trial court's order following arguments on defendant's motion for sanctions against the State for violating the discovery protective order. "A court looks to the substance, not the form, of an order to determine if it is injunctive in nature." *Skolnick v. Altheimer & Gray*, 191 Ill. 2d 214, 221 (2000). Defendant does not contest the Village's characterization of the order as an injunction. "An injunction is a court order commanding or preventing an action." *In re Cons. Objection to Tax Levies*, 193 Ill. App. 3d 490, 498 (2000). The trial court's ruling extending the protective order forbade the Village from using any evidence of defendant's alleged criminal conduct in the pension proceeding until the criminal case was concluded. The trial court also required the return of the materials furnished to the Village in response to a lawfully issued

subpoena by the Board. We clearly have jurisdiction to entertain the Village's appeal under Supreme Court Rule 307 (a)(1) (eff. Nov. 1, 2017).

¶ 39 Defendant argues that the Village's appeal is "from an order of the circuit court announced on March 5, 2019" and because the notice of appeal was filed on May 15, 2019, the appeal is untimely. We disagree. At the March 5th proceeding, after extending the protective order, the court ordered the parties to "sit down and figure out what gets returned" and to "work on the order for today, so I can perfect that order." The trial court clearly did not enter an order on March 5, 2019. Illinois Supreme Court Rule 271 (eff. Jan. 1, 2018) provides that "[w]hen the court rules on a motion other than in the course of trial, the attorney for the prevailing party shall prepare and present to the court the order or judgment to be entered unless the court directs otherwise." Defense counsel did not tender a written order to the trial court until April 23, 2019. Supreme Court Rule 271 applies to criminal appeals. *People v. Harper*, 2012 IL App (4th) 110880, ¶ 18. On April 23, 2019, when the court refused to enter the order proposed by Mr. Morrison, the court stated that its ruling "is my ruling. It stands. It's transcribed and it's in full force and effect." Like in *Harper*, these comments by the trial court fall under Rule 271's language "unless the court directs otherwise." *Id*. ¶ 20. The purpose of the rule providing for a written order is to fix precisely the date of the order for purposes of appeal. See *Just Pants v. Wagner*, 247 Ill. App. 3d 166, 175 (1993) (interpreting Rule 272). The time for filing a notice of appeal therefore begins on April 23, 2019. The Village filed its notice of appeal on May 15, 2019, well "within the 30 days from the entry of the interlocutory order." Supreme Court Rule 307(a).

¶ 40                          A.  Pension Board Records

¶ 41 The material in the record from the Pension Board proceedings were filed on April 5, 2019 in the trial court along with affidavits of Village attorney Paul Denham and Village Manager Ann

Marrin.  On appeal, defendant argues that Mr. Denham's affidavit should be stricken "on both foundational and ethical grounds."  Defendant did not object to the submission of the Pension Board records in the trial court.  Forfeiture aside, we may take judicial notice of the Pension Board records and transcripts as they are public records.  Illinois Rule of Evidence 2.01(c) (a court may take judicial notice, whether requested or not); *Finish Line Exp. Inc. v. City of Chicago*, 72 Ill. 2d 131, 136 (1978) (motion to strike references to Legislative Investigating Commission Report "is denied").  The Village points out that the purpose of the Denham affidavit and the Board records is to correct the record with respect to the arguments made by defendant in the trial court *vis a vis* the arguments made by defendant before the Board.  The Village points out that defendant does not dispute the "description or contents of the documents."  We take judicial notice of the arguments before the Board as well as the Board's decision to grant as well as lift the stays.  *Lynch v. City of Waukegan*, 363 Ill. App. 3d 1078, 1085 (2006) (a court may take judicial notice of a prior administrative decision).

¶ 42                                B.  Standing

¶ 43    Defendant argues in her response brief that the Village lacks standing to intervene or bring this appeal.  As our Supreme Court explained in *In re A Minor*, (1989):

¶ 44    "An injunction has been defined as a 'prohibitive, equitable remedy issued by or granted by a court at the suit of a party complainant, directed to a party defendant in the action, or to a party made a *defendant for that purpose*, forbidding the latter to do some act ***which he is threatening or attempting to commit,' or more simply as 'a judicial process operating *in personam* and requiring [a] person to whom it is directed to do or refrain from doing a particular thing.'" *Id*. at 261 (quoting Black's Dictionary 705 (5th Ed. 1983).

¶ 45    During the hearing before the Pension Board on the motion to lift the stay the Village argued that if the stay was lifted it "would have to try that criminal case here which would require many witnesses and many days of testimony."  There is no question that the trial court's order required the Village to refrain from presenting evidence of defendant's alleged criminal conduct in the Pension Board proceedings.  As such, the Village properly exercised its right to appeal under Supreme Court Rule 307(a).

¶ 46    Defendant also argues that because the Village filed both a motion to reconsider and a petition to intervene that have not been ruled on "the matter is not ripe for appeal."  Defendant cites no authority for this argument; as such the argument is forfeited.  Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018); *People v. Oglesby*, 2016 IL App (1st) 141477, ¶ 213.

¶ 47                              C.  Trial Court's Jurisdiction

¶ 48    The Village argues that the trial court lacked personal jurisdiction over it by defendant's failure to comply with its statutory procedures for service of process on a governmental corporation.  *People v. Echenique*, 224 Ill. App. 3d 388, 392 (1991); 735 ILCS 5/2-211 (service on public municipal, governmental and quasi-municipal corporations).

¶ 49    Defendant argues that the Village waived all objections to the trial court's jurisdiction over it by filing its' motion to reconsider on April 5, 2010, which addressed the merits.  In support of this contention she cites to section 2-301 of the Code of Civil Procedure (Code).  735 ILCS 5/2-301 (a-6) (West 2018).  Defendant claims that by taking affirmative action dealing with the substantive issues the Village submitted itself to the jurisdiction of the court.

¶ 50    A reviewing court reviews *de novo* the question of whether a trial court acquired personal jurisdiction over a litigant.  *TCA International, Inc. v. B&B Custom Auto*, 299 Ill. App. 3d 522, 531 (1998).  Service on a village may be acquired "by leaving a copy***with the president of the

board of trustees or village clerk\*\*\*." 735 ILCS 5/2-211 (West 2018). It is undisputed that defendant did not strictly comply with section 2-211 of the Code. However, challenges to personal jurisdiction may be waived. We agree with defendant that by filing a detailed motion to reconsider the trial court's order on the merits, without first filing a motion challenging the court's jurisdiction, the Village waived its objection to the sufficiency of process. 735 ILCS 5/2-301 (a-6) (West 2018).

¶ 51                          D.  Supreme Court Rule 415

¶ 52    Supreme Court Rule 415(g) (eff. Oct. 1, 1971) provides that trial courts with the discretion to impose sanctions if a "party has failed to comply with an applicable discovery rule or an order issued pursuant thereto." The court "may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances."

¶ 53    In this case, defendant alleged that the State violated Supreme Court rule 415(c) as well as Judge Rosetti's protective order when it responded to the Village's subpoena in the pension proceeding. The Village argues that the plain language of Rule 415(c) and the protective order demonstrate that the State violated neither Rule 415(c) nor the protective order. The parties' arguments require us to interpret Rule 415(c). We interpret a supreme court rule in the same manner as a statute; that is to ascertain and to give effect to the drafter's intent. *Roth v. Illinois Farmers Insurance Co.*, 202 Ill. 2d 490, 493 (2002). The best indication of the drafter's intent is the ruler's language, given its plain and ordinary meaning. *Id.* at 493. Where the language is clear, it is to be applied as written; however, if the language is susceptible to multiple interpretations, the court may look beyond the language to consider the rule's purpose. *Reda v. Advocate Healthcare*, 199 Ill. 2d 47, 55 (2002). A court should not interpret a rule in a manner

that would lead to consequences that are absurd, convenient or unjust. *McMahon v. Industrial Commission*, 183 Ill. 2d 499, 513-14 (1998). Rule 415(c) provides that "[a]ny materials *furnished to an attorney* pursuant to these rules shall remain in his exclusive custody and be used only for purposes of conducting his side of the case, and shall be subject to such other terms and conditions as the court may provide." (Emphasis added.) Ill. S. Ct. R. 415(c) (eff. Oct. 1, 1971). The language of Rule 415(c) refers to "material which an attorney receives" in discovery, not to material acquired by an attorney while conducting his or her own side of the case. Committee comments to Rule 415(c). "The purpose of Rule 415(c) is to prevent pre-trial discovery from becoming 'matters of public availability once they had been *turned over to counsel*." (Emphasis added.) *People v. Savage*, 361 Ill. App. 3d 750, 760 (2005). As defendant freely admits, she has yet to file an answer to discovery so none of the material provided by the State in response to the Pension Board subpoena was covered by Rule 415(c).

¶ 54　The State's Attorney received the materials from the task force and other agencies that conducted the investigation of Joe's death and subsequent financial investigation. The record also shows that the State and the Village were well aware that public dissemination of the facts surrounding defendant's alleged criminal conduct prior to the criminal trial could affect defendant's right to a fair trial. It was the defendant who moved to lift the stay and go forward with the pension proceedings knowing that the Village would seek to introduce evidence of defendant's alleged criminal conduct. We note that defendant has not alleged that either the State or the Village attorneys violated either Illinois Rules of Professional Conduct 3.6 or 3.8 governing extrajudicial statements of attorneys that might pose a threat to the fairness of defendant's criminal trial. The State did not violate Supreme Court Rule 415(c).

¶ 55    The protective order was clearly directed to defense counsel upon receipt of the State's answer to discovery. The order was entered on the State's motion and provided that the records shall be made available to defense counsel and remain in counsel's "exclusive custody and be used only for the purposes of conducting counsel's side of the case." The order provided that "defendant personally may review the discovered materials" and that the "cost of making duplicates of reports shall be borne by the defendant, unless otherwise ordered by the court." The State did not violate the protective order by complying with the Village's subpoena.

¶ 56    The purpose of the Supreme Court's "discovery rules are to prevent surprise or unfair advantage by either party and to aid in the search for the truth." *People v. Turner*, 367 Ill. App. 3d 490, 499 (2006). Sanctions should be used to "accomplish the purposes of discovery, not to punish the offending party, and the imposition therof should not encroach on a party's right to a fair trial." *Id*. In this case there was no offending party, thus the trial court erred in ordering the State to return the Bates stamped material and the recording of defendant's conversations with the police.

¶ 57                              E.  Gag Order

¶ 58    The trial court's order precluding the Village from presenting evidence of defendant's alleged criminal conduct before the Pension Board interferes with the Board's exclusive original subject matter jurisdiction to hear and determine the merits of defendant's application. *People ex rel. Madigan v. Burge*, 2014 IL 115635, ¶¶ 32-37. "A board's exclusive authority to control the pension fund and disability payments also includes the power to conduct the hearings and the discretion to decide who can participate in those hearings and to what extent." *Village of Alsip v. Portincaso*, 2017 IL App (1st) 15316, ¶ 16. While the Village waived its objection to personal

jurisdiction, subject matter jurisdiction may not be waived. The trial court lacked subject matter jurisdiction to restrict the presentation of evidence before the Board.

¶ 59                                    F.  Waiver

¶ 60    The Village argues that defendant waived any challenges to its' subpoena by aggressively urging the Pension Board "to move forward with deliberating on her pension application before this criminal matter is resolved." We decline to rule on this argument as the Pension Board has original jurisdiction over the pension proceedings.

¶ 61    While we decline to rule on waiver, we note that defendant cannot look to the circuit court in order to "obtain findings and opinions to affect, control or guide the outcome of the proceedings before the administrative body." *Goodwin v. McHenry County Sheriff's Office Merit Commission*, 306 Ill. App. 3d 251, 256 (1999). In *Goodwin*, the plaintiff filed a complaint for declaratory and injunctive relief against the Merit Commission. The trial court ordered the Merit Commission to stay the disciplinary proceedings until the disposition of the criminal case pending against the plaintiff. The Sheriff appealed. The plaintiff argued that the trial court ruled properly because her "due process rights would be violated if the disciplinary charges were allowed to proceed before the Merit Commission, which plaintiff claimed was not an impartial tribunal. This court rejected the plaintiff's argument, finding that the plaintiff failed to exhaust the administrative remedies that were available. *Id* at 255. We noted that "[t]he fact that there are clear indications that the administrative agency will rule adversely is generally insufficient to abort the administrative process. *Id.* at 256 (citing *Ellison v. Kane County Sheriff's Office Merit Commission*, 108 Ill. App. 3d 1065, 1067 (1982)). "Where the Administrative Review Law is applicable and provides a remedy, a circuit court may not redress a party's grievances through *any other type of action*."

(Emphasis added.)  *County of Knox ex rel. Mastorson v. Highlands LLC*, 188 Ill. 2d 546, 551-52 (1999).

¶ 62    Like in *Goodwin*, the fear that defendant's right to a fair trial might be jeopardized is insufficient to abort the administrative process before the Pension Board.  As the Village points out, "the Village is actually a party in the Pension proceedings and would have a full opportunity to be heard in response to such a motion."

¶ 63    Finally, we recognize the trial court's legitimate concern for defendant's Sixth Amendment right to a fair trial.  However, as the Village points out, the concern over the potential prejudice to the criminal case was addressed and remedied by the Board when it issued the stay.  Again, the stay was lifted on defendant's motion.

¶ 64                                    III.  CONCLUSION

¶ 65    For the reasons stated above, the trial court's order entered pursuant to defendant's motion for discovery sanctions is reversed in its entirety.

¶ 66    The judgment of the circuit court of Lake County is reversed.

¶ 67    Reversed.

¶ 68